# EDWARD H. GENO

v.

# FALL MOUNTAIN PAPER CO.

## May Term, 1895.

*Liability of master for unsafe appliances.    Common use
not the test.    Evidence.    Assumption of risk.*

1. That an appliance is in common use tends to show that a master is not guilty of negligence in providing it for the use of his employee, but is not conclusive upon that proposition. The test is, would a reasonably prudent man furnish it under the circumstances.

2. *Held*, that the charge as given upon the subject of negligence in the use of the projecting set-screw was correct.

3. The question being whether the use of a projecting set-screw was negligent, it is proper to show what the expense would be of replacing it with one that was counter-sunk.

4. *Held*, that the charge upon the claim of the defendant that the plaintiff could not recover because he had incurred an obvious danger was unexceptionable.

Case for negligence of the defendant.    Plea, the general issue.    Trial by court at the September term, 1894, Rutland county, START, J., presiding.    Verdict and judgment for the plaintiff.    The defendant excepts.

The defendant was proprietor of a pulp mill and the plaintiff was employed by it at work upon certain screens in said mill at the time he was injured.    His evidence tended to show that he had been engaged by the defendant something

like a week before the injury ; that he was sixteen years of age ; that he had no knowledge of the operation of the machinery which he was required to run, nor of any machinery, and that the defendant knew this when he employed him ; that he received no instruction whatever as to the oiling of the countershaft from which his machine was driven and which was fastened to the ceiling some eight or ten feet above the floor ; that upon the night of the injury he was instructed by the foreman of the mill to oil this countershaft ; that he attempted to do so by walking up over the screens and by reaching with his hand to the bearings ; that while attempting to do this the sleeve of his frock was caught upon a projecting set-screw and he was drawn violently around the shaft and seriously injured.

The plaintiff claimed that the defendant was negligent in two respects.    First, in using a projecting set-screw, and, second, in having given him no instruction as to the oiling of this shaft.

The set-screw in question projected about three-fourths of an inch from the collar and the evidence of the plaintiff tended to show that the set-screw ought to have been countersunk so that the head would be flush with the surface of the collar.    He was allowed to show under the exception of the defendant, by witness McEvoy upon direct examination, and by the witness Hall upon cross-examination that the expense of replacing the projecting set-screw with one properly counter-sunk would be trifling.

The defendant claimed that the projecting set-screw was one in ordinary use in the vicinity and that the plaintiff when he attempted to oil the counter-shaft by walking up over the screens went into a place of obvious danger and could not for this reason recover.    The questions raised by the exceptions of the defendant to the charge of the court upon these two points fully appear in the opinion.

*L. M. Read* and *J. C. Baker* for the defendant.

The plaintiff could not recover in respect to the set-screw for that it was in common and ordinary use in the vicinity at the time of the accident, A man is not obliged to furnish the best machinery but only such machinery as is ordinarily used. *Mfg. Co.* v. *McCormick*, 118 Pa. 519; *Ship Building Works* v. *Nuttall*, 119 Pa. 149; *Coal Co.* v. *Hayes*, 128 Pa. 294; *Sisco* v. *Railroad*, 39 N. E. Rep. 958; *Smith* v. *Railway Co.*, 69 Mo. 32; *Salter* v. *D. & H. C. Co.*, 3 Hun. 338; Deering, Neg., s. 198; *Titus* v. *R. R. Co.*, 136 Pa. 618; *Augerstein* v. *Jones*, 139 Pa. 183; *Marshall* v. *Furniture Co.*, 67 Mich. 167; Buswell, Per. Injuries, ss. 194, 196; *Sweeney* v. *Envelope Co.*, 101 N. Y. 524.

*C. A. Prouty* and *Butler & Moloney* for the plaintiff.

The question was not whether the projecting set-screw was a device in ordinary use but whether a reasonably prudent man would have used it under the circumstances. Wood's Mas. & Serv., ss. 329, 331, 345; Sher. & Red., Neg., ss. 194, 195; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 294; *Longdon* v. *Scale Co.* 66 Vt. 255; *Houston* v. *Brush & Curtis*, 66 Vt. 334.

TYLER, J.    The defendant's counsel requested the court to instruct the jury as follows:

"If the jury shall find that the plaintiff was caught upon a set-screw, notwithstanding this fact, if, at the time of the accident, said set-screw was an approved appliance then in common use in that vicinity, for the purpose for which it was used, then the defendant was not chargeable with any neglect in this respect.

"If the set-screw with the projecting head was the common and ordinary way of attaching collars to shafting in the manufactories of this vicinity, that method was reasonably safe in the eyes of the law. It was not enough that some persons regarded a counter-sunk set-screw a sa valuable safeguard; nor can the jury set up its judgment against the general custom of the business. The test in law is general use.

"The employer is not bound to use the newest and best appliances for his employee, but he performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to style of implements, method of attachment, or nature and mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of business."

The court declined to so charge but did charge as follows:

"It is claimed that the defendant was negligent in having this projecting set-screw, in view of the circumstances in which the plaintiff was required to oil the shafting, in the circumstances which the plaintiff claims he was directed to do it.

"The plaintiff seeks to recover for the negligence of the defendant. No recovery can be had for the damages suffered by the plaintiff unless they were caused by the wrongful neglect or default of the defendant. Negligence is the failure on the part of the defendant to perform a legal duty that it owed to the plaintiff. The duty incumbent on the defendant, as the employer of the plaintiff, was to use the diligence and care of a prudent man to furnish the plaintiff a reasonably safe place to work, and reasonably safe machinery, tools, and appliances with which to do his work. If the defendant, in the use of this set-screw in the place where it was used, was in the exercise of the care and prudence that prudent men are accustomed to exercise in like circumstances, then the defendant is not liable on account of negligence in using this set-screw in that place, and for the purpose it did use it. The employer is not bound to use the newest and best appliances for his employees, but he performs his duty when he furnishes those of ordinary character and reasonably safe, and the former is the test of the latter, for in regard to style of implements, methods of attachment, or nature and mode of performance of any work, reasonably safe being, or meaning, safe according to the ordinary risks of the business. * * * * * *

" Now it is claimed that it was negligence for the defendant to have this projecting set-screw in a place such as is disclosed by the evidence here, projecting from the collar upon this countershaft. It is claimed that the defendant was negligent in having that set-screw there, projecting in the

manner it did, in view of the claim of the plaintiff that this boy had not been instructed in respect of that danger; in view of the claim that he was in fact sent up there to oil the bearing of the counter-shaft.

"Was the defendant negligent in having this set-screw projecting in the manner that it did, in view of the. facts as you find them in respect to the direction that was given to the plaintiff about oiling the bearings upon that counter-shaft? In having this projecting set-screw in the circumstances, was the defendant in the exercise of that care and prudence that prudent men are accustomed to exercise in like circumstances? This is a question for you to determine in connection with what the plaintiff was required to do with respect to the counter-shaft by the authority of the defendant, or by the authority that the plaintiff believed from the conduct of the defendant, was the authority of the defendant. Was the defendant negligent in that respect, and did this injury come to the plaintiff by reason of that neglect, while he was in the exercise of care and prudence on his part, and without any contributory negligence on his part? If the defendant was thus negligent, and this injury was the result of that negligence, and without any contributory negligence on the part of the plaintiff, then the plaintiff is entitled to recover. If the defendant was not negligent; if in this respect it was in the exercise of the care and prudence that prudent men exercise in like circumstances, then the plaintiff cannot recover by reason of the negligence in the circumstances disclosed by the evidence.

"If the jury should find that the plaintiff was caught upon a set-screw, notwithstanding the fact that at the time of the accident said set-screw was such a set-screw and appliance as a prudent man would use in like circumstances for the purpose for which it was used, then the defendant is not chargeable with any neglect in this respect."

The requests were framed in accordance with the doctrine of several cases that are cited by the defendant, which we will briefly state.

In *Allison Mfg. Co.* v. *McCormick*, 118 Pa. St. 519, the plaintiff who was employed by the defendant as a laborer, was ordered, with two other men, to paint an empty water tank in one of the defendant's shops. They took with them

into the tank several buckets of paint known as "black varnish," largely composed of asphaltum and benzine. The tank being dark, the men carried an ordinary railroad lamp. While they were engaged in their work an explosion occurred and the three men were injured—two of them fatally. It was shown by the defendant that the paint was of a kind which had been used in its shops to the amount of fifteen to forty barrels yearly for fifteen years; that it was in the same condition as when procured from the manufacturers, and that no explosion had ever occurred. The plaintiff claimed that the defendant was bound to know the composition of the paint, the effect of spreading it on the interior of the tank, and the danger of explosion. The defendant claimed that upon the facts there could be no recovery, and the supreme court so held upon the ground that the paint was one in common use for the purpose for which it was used by the defendant, and reasonably safe.

In *Ship Building Works* v. *Nuttall*, 119 Pa. St. 149, the plaintiff was employed in removing material from the left to the right side of a circular saw, so as to be within easy reach of the sawyer, and while passing behind the saw in this occupation a loose piece of wood was caught by the saw and thrown backwards, striking the plaintiff and injuring him. It appeared that there was a liability of sticks being caught and thrown by the saw, but that such an accident had not happened in the defendant's shop in many years. The plaintiff claimed that it was the defendant's duty to warn the plaintiff of the danger, also to provide a guard for the saw. The supreme court held it was error to submit these questions to the jury, the danger being obvious and a guard not being in common use, and said:

"It is not enough that some persons regard it as a valuable safeguard. The test is general use. * * * the saw * * * was such an one as the company had a right to use, because it was such as is commonly used by mill owners."

The same doctrine is recognized and applied in *Lehigh*

*Coal Co.* v. *Hayes*, 128 Pa. St. 294, where the negligent act complained of was the employer's failure to provide any appliance for warning employees that a draw of coal was to be made, there being no evidence that such appliances were in general use. In *Titus* v. *Railroad Co.*, 136 Pa. St. 618, the negligence charged was the use of a particular broad-gauge car body upon a narrow-gauge track, not adapted thereto. The court said that an employer performed his duty when he furnished appliances of ordinary character and reasonable safety, and that the former was the test of the latter; that in regard to the style of the implement, or the nature of the mode of performance of a work, "reasonably safe" means safe according to the usages, habits, and ordinary risk of the business. The same rule was applied in *Augerstein* v. *Jones*, 139 Pa. St. 183, where an employee was injured by the bursting of an emery wheel not shown to be defective or constructed out of the usual way, and where it was claimed that the accident might have been prevented by the adoption of a certain device.

In *Smith* v. *Railroad Co.*, 69 Mo. 32, it is said that while railroad companies are bound to use appliances that are not defective in construction, as between themselves and their employees they are not bound to use such as are of the very best or most approved description; that if they use such as are in general use, it is all that can be required.

In *Marshall* v. *Widdicomb Furniture Co.*, 67 Mich. 167, the court remarked:

"That which has been approved as safe by reasonable experience may be presumed safe by those who rely on that experience to justify them in selecting it. But there an employee was killed by a knife flying out of a rapidly revolving shaper-head, the first time it was used as then arranged, which was upon a new plan got up by one of the defendant's managers. The court considered that there was no evidence of negligence and directed a verdict for the

defendant, which was held error, there being some evidence tending to show that the device was not made in accordance with well known rules of mechanics."

*Salters* v. *Del. & Hud. Canal Co.*, 10 Hun. 338, and *Sweeney* v. *Berlin & Jones Envelope Co.*, 101 N. Y. 520, are to the effect that the servant accepts the service of his employer subejct to the risks incident to it, and that when the machinery and implements of the employer's business are at the time of a certain kind or condition, and the servant knows it, he can make no claim upon the master to furnish other or different safeguards. In the former case the court remarked that a railroad company was bound to · place its employes under no risk from imperfect or inadequate machinery or other material, means or appliances. known, or which, but for their negligence, would have been known to them.

In *Sisco* v. *Railroad Co.*, 39 N. E. R. 958, (N. Y. Court of Appeals) a brakeman was injured upon a stationary arm of a mail crane while climbing up the side of a car in the performance of his duty. It appeared that cranes of similar construction were in common use on many other extensive lines of railroad. There was no evidence that the crane would have performed its work if placed further from the car, nor that it was nearer than on other roads. It appeared that there was a crane in use on some lines, the arm of which being movable, would, when not extended by the mail-bag, rise automatically, but the uncontradicted evidence of the defendant was that the stationary arms were preferable. It was held error to submit any question of fact to the jury.

The defendant relies upon the statement of the law in the Pennsylvania cases, especially upon what is said in the opinion in *Titus* v. *Railroad Co.*,

"That the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business;" * * * "that no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in

the same business, is a negligent way for which liability shall
be imposed."

It is unnecessary to consider here whether the rule above
stated might, or might not be correct as applied to particular
cases, as where the direct cause of the injury was the use of
certain paint which was in common use; or of a stationary
arm to a mail-crane; or where a wheel or other appliance
such as is in common use, bursts or breaks and injures an
employee. But the doctrine of "common use," "the ordinary
usage of the business," as one of general application, we are
not inclined to adopt, though it might apply to the facts in a
given case. We think the more reasonable rule is to require
the employer, in the selection and setting of machinery, to
use the care of a prudent man in like circumstances. If a
machine or appliance were not such as would commend it-
self to the judgment of a prudent man, and an injury occurs
from its use, it ought not to be a defense to say that it is one
of a kind in common use. It cannot always be assumed
that machines in common use would meet the approval of
prudent men. They might remain and often do remain in
such use when they ought to have been superseded by
others of an approved pattern. It would hardly be a defense
for a employer to say that a certain machine upon which an
employee had been injured was one of a kind in common use,
if the employer was compelled as a prudent man to admit
its use was, in his own judgment, dangerous.

"Common use" and "the care of a prudent man" are not
necessarily equivalent terms. That a machine is in com-
mon use is at the most a circumstance bearing upon the
question of negligence.

A machine might be one of a kind in common use, or even
the best in use, and yet its safety in respect to its position or
setting in a mill be questionable. In this case, even if the
set-screw with a projecting head had been the most approved
kind and in universal use, it could not be held as a mat-

ter of law that its employment, for that reason, would shield the defendant from liability.    It would still be an open question, beyond the province of the court to decide, whether its use, in the place where it was set, was reasonably safe in view of the fact that the plaintiff was required to oil the bearings upon the counter-shaft and was liable to come in contact with the head of the set-screw.    So the real question was not whether this kind of a set-screw was one in common use, but whether, in the circumstances of the case, this projecting head was reasonably safe.

In any event the defendant was not entitled to the instruction, as an abstract proposition, that "reasonably safe means safe according to the usages, habits, and ordinary risks of business," disconnected from the question whether the plaintiff received proper instructions about oiling the bearings.    The words, "according to the usage and habits of business," of the omission of which from the charge the defendant complains, would not have expressed the true idea of the law unless they would have been understood by the jury to require the positive quality of care and prudence as defined by the court.    The charge was a correct statement of the law and in accordance with the uniform decisions of this court.    *Congdon* v. *Howe Scale Co.*, 66 Vt. 255 and cases there cited.

It must have appeared at the trial that a counter-sunk set-screw was in use.    This fact, together with the evidence tending to show that the set-screw with a projecting head was in common use in the vicinity, was for the jury to consider in determining the question whether the defendant was in the exercise of that degree of care which the law requires.

The testimony of McEvoy and Hall was properly admitted.    The question for the jury being whether or not the defendant was in the exercise of ordinary care, it was proper that they should know whether it was necessary to have the head of the set-screw project beyond the shaft, and what

would have been the expense of exchanging the set-screw in use for a counter-sunk set-screw. Whether the appliance was reasonably safe or not might depend somewhat upon the difficulty and expense of exchanging it for a better one.

There seems to have been no question made about the authority of Keefe to order the plaintiff to oil the bearings. Upon the questions whether the plaintiff required instructions as to the danger, whether he acted in pursuance of orders, or went without orders and unnecessarily upon a wet and slippery place the jury were charged fully and in substantial compliance with the defendant's request, as follows :

"If the plaintiff, climbing upon and over the screens and spout, when they were wet and slimy and slippery, and knowing the danger, unnecessarily went up there, and by reason of his voluntary act fell upon the shaft, or was caught by it, his own negligent act contributed to his injury, and he cannot recover.

"If the plaintiff was directed by Keefe to use the long-handled oil-filler in oiling these bearings upon the overhead shaft, and instead of using it as directed, he climbed into a dangerous position, one where danger was obvious and could be seen by careful observation, he assumed the risk incident to that method of doing the work, and cannot recover in this action.

"The plaintiff had been at work more than a week upon the screens of this machine, and had seen the shaft and pulleys revolving from one hundred to one hundred and twenty-five times a minute, and if he observed that the screens and spouts were wet and slippery, there was no instruction necessary to inform him of their danger, and he did not need to be told that it was dangerous to come in contact with revolving shafts.

"In order to show negligence on the defendant's part, the plaintiff must show omission to inform him of something that he needed to know in order to be safe. It must be assumed that the plaintiff had the intelligence and understanding that boys of his age usually have."    *    *    *

*Judgment affirmed.*