HELMKE, by guardian *ad litem*, Appellant, vs. THILMANY, Respondent.

*May 16 — June 21, 1900.*

*Master and servant: Personal injury: Minors: Unguarded machinery: Assumption of risk: Court and jury.*

1. While a sixteen year old boy, at the close of his first day's work in defendant's paper mill, was putting on his coat preparatory to quitting work, in an open space a few feet wide between unguarded gearing on a paper machine and closets in which clothing of employees was kept, he backed up against the gearing and the garment was drawn into it, and he was injured. In an action to recover therefor it appeared, among other things, that plaintiff had worked about other paper mills for two years; that he knew there was danger around the wheels, but did not at the time notice those which caused the injury, although he could have seen them had he been facing them; and that there were vacant spaces in the mill where he might have changed his clothes in safety. *Held,* that he assumed the risk as matter of law, even though he had not been warned concerning the danger. WINSLOW and DODGE, JJ., dissent.

2. In such a case the relation of master and servant continued to exist, although at the time of the injury plaintiff was changing his clothes preparatory to going home.

APPEAL from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash.*

CASSODAY, C. J.    This action was commenced September
·9, 1897, to recover damages for personal injuries sustained
by the plaintiff while in the employ of the defendant as a
·cutter boy in his paper mill at Kaukauna, March 31, 1896,
whereby his right hand and arm were caught and crushed
between the revolving cogwheels, and so injured as to ren-
·der amputation thereof necessary three inches below the
·elbow.    The grounds upon which the plaintiff seeks a re-
·covery are that such cogwheels were unguarded, and unnec-
-essarily and unreasonably dangerous, and because of the
plaintiff's youth, inexperience, and lack of judgment, and
the defendant's failure to instruct, warn, or caution the
plaintiff against such danger.    The defendant answered, by
way of admissions, denials, and counter allegations, to the
·effect that the injuries sustained by the plaintiff were in con-
·sequence of his own gross carelessness and negligence, and
were not the result of any negligence on the part of the de-
fendant.    At the close of the testimony on the part of the
plaintiff the court granted a nonsuit, and from the judgment
·entered thereon the plaintiff brings this appeal.

The room in which the machinery was located was about·
·one hundred feet long from east to west, and nearly thirty-
.six feet wide.    The paper machines and appurtenances ran
from near the westerly end of the room toward the east, a
distance of about sixty feet, and were about nine feet wide,
and the southerly side of such line of machinery.was about
sixteen feet from the south wall of the room, and constituted
the front side of such machines, where several operators,
including the plaintiff, were supposed to be when at work
·and the machines in operation.    The machines were pro-
·tected by being covered.    There was no gearing nor cog-
·wheel on that front side, and the plaintiff's work was to
·clean the machines and lay off the paper when it was run-
ning,— that is, pick it up and lay it on the pile when it
·came from the cutter.    The north wall of the room was a

little over eleven feet north of the north side of the line of
machinery mentioned.    Opposite such machinery on the
north side were four windows, each window four feet wide.
Between such windows there was a space of about ten feet
of wall, and against such wall were closets four and one
half feet wide, and standing out from the wall nineteen
inches, in· which the workmen placed their garments or
clothing.    The closet so occupied by the plaintiff was oppo-
site about the middle of such line of machinery.    From the
door of that closet when closed to the north side of such
line of machinery was nine and one-half feet, and the same
was open and free the whole distance, and was also open
and free from the westerly end of such closet easterly for a
distance of about seven and one-half feet.    From the closet
east along the north wall of the building there was an open
space of about five and one-half feet wide for passage.    Five
feet south of the north wall of the room, immediately west
of the plaintiff's closet, was the face of a large cogwheel,
thirty-six inches in diameter, and from the center of which
was a shaft running to the paper machine mentioned.    A
small cogwheel on the east end of a shaft matched into the
large cogwheel on the west side thereof, and on the face
towards the wall.    The center of the small cogwheel, as
well as the large cogwheel, was twenty-nine inches from
the floor.    At the time of the accident the plaintiff was
caught between the cogs of the two wheels under circum-
stances hereinafter stated.    Such is a brief description of
the place of the accident.

At the time of the injury the plaintiff was sixteen years
and six and one-half months of age.    He testified to the
effect that he quit school when he was twelve years of age;
that he then piled headings in a dry house in Marathon
county for one hundred days; that he then came back
to Kaukauna, and went to work in Patten's paper mill,
scraping screens in the pulp room; that he continued to

work in Patten's paper mill for about two years or a little over; that in scraping screens he had to reach down in the bottom of the hopper and rake the bottom of it; that he did not scrape screens right along all the time that he worked in Patten's paper mill; that a part of the time he was wheeling wood, and then cleaning the roll on the pulp machine, to get the pulp off the roll, and in doing so he had to work near the machine; that he did not know how long he so worked removing the pulp from the rolls; that while at Patten's mill he also wiped off the machine on the front side, and cleaned the floor when there was grease around; that in wiping off the machine on the front side he worked near the revolving cylinders or calenders, but there was no cogwheel on that side; that in cleaning up the grease on the floor he went on both sides of the machine,— the front and back sides of the machine; that on the back side he had to go among the gearing and wheels,— down under them,— upon his hands and knees, and wipe up the grease; that right on the side he had to reach down under the cogwheels, but he was very careful not to let his clothing get caught in the wheels, because he knew if it got caught there was danger of being crushed; that there were other boys about his age doing the same kind of work in the Patten paper mill; that whenever he got a chance he always went ahead, and worked himself up; that after a while he so worked himself up to the position of cutter boy in Patten's paper mill; that he worked as cutter boy in that mill for five weeks; that he put the paper off when it broke; that in doing so he had to get his hands near the calenders or rollers; that he pushed the paper into the rollers with his wrist, so that his fingers would not get caught; that the defendant's paper mill was about half a mile from Patten's paper mill.

Plaintiff further testified that his father worked in the defendant's mill, and procured the position of cutter boy for him in the defendant's paper mill; that he commenced

work in the defendant's mill at 7 o'clock on the morning of March 31, 1896, and relieved the night cutter boy, Reikel; that he hung his clothes in the closet mentioned, by direction of Reikel, before commencing work; that the machine tender, Nolan, directed him to sweep up behind the machine about 2 o'clock, but said nothing about being careful and not getting hurt; that he had already learned to be careful; that whenever he went near the machine he had it in mind to be as careful as he could, because he knew there was danger around those wheels; that if Nolan or any one else had told him to be careful around those wheels he would have told him to do something that he knew enough to do; that he went behind the machine three times during that day; that he hung his coat in the closet in the morning; that he got it at noon, and hung it in the closet again after coming back from dinner; that Reikel came to relieve him about half past 5 o'clock in the afternoon; that Reikel hung his clothes in the closet at the same time that the plaintiff got his from the closet; that he put his coat on right by the closet; that the others changed their clothing right by the closet; that the end of his coat must have caught between the two cogwheels mentioned; that in putting on his coat his face was towards the closet and his back towards the machine; that, if his face had been the other way, he would have seen the machine, which was in plain sight; that, if he had been facing the machine, he could have kept his coat away from the wheel, if he had seen the gearing at the time of putting his coat on; that if he had been facing the cogwheels while putting his coat on he could easily have prevented it from being caught in the wheels; that he did not face the cogwheels, because his coat was in the closet, and he did not know there was gearing behind him; that he had been there before during the day, but did not take notice of the gearing; that he did not remember whether he cleaned under that gearing that day;

that there was not very much dirt there; that when he commenced work that day he knew he was going into a paper mill with machinery in it, and that he ought to keep himself safe from the machinery; that he never thought that it was his duty to look around and see where the machinery was located so as to *keep away from it; that he first put on his vest and then his coat, and that was why he did not turn around; that if he had taken his coat on his arm, and passed between the driers and the calenders south of the machinery, he would have had a wide open space in which to put it on; that there was paper in the space a few feet east of the closet, and he did not remember whether there was room enough to put on his coat there or not, but he could have gone around the end of the machine into the open space south of it, and be in a place of safety; that the space between the driers and the calenders was about five feet; that it did not occur to him that there was danger of getting his hands or his coat caught in the cogwheels; that when he put his coat on Nolan and Reikel were east of him,— that is, in the direction he would naturally go to get out from behind the machine; that it was just getting dusk, and the electric lights had not been turned on.

Such is the general outline of the evidence.

Undoubtedly, counsel for the plaintiff is correct in claiming that although the plaintiff had finished his day's work, and had just changed his clothes preparatory to going home, yet that the relation of master and servant still existed between him and the defendant. *Ewald v. C. & N. W. R. Co.* 70 Wis. 420; *McGregor v. Auld,* 83 Wis. 546.

Counsel for the plaintiff contend that the closet in which the plaintiff and others kept their clothing was in dangerous proximity to the cogwheels mentioned. They cite the statute requiring the owner or manager of any factory, workshop, or other place were labor is performed to keep " all belting, shafting, gearing, hoists, fly-wheels, elevators and

Helmke vs. Thilmany.

·drums therein, *which are so located as to be dangerous to em-
ployees in the discharge of their duty,*" securely " guarded
·or fenced." Sec. 1636*j*, Stats. 1898. There is no claim,
nor ground for claiming, that such statute precludes the de-
fense of contributory negligence, nor the assumption of
.risk. *Thompson v. Edward P. Allis Co.* 89 Wis. 523, 530.
Similar statutes have been construed the same way. *Curry
v. C. & N. W. R. Co.* 43 Wis. 665, 683; *Holum v. C., M. &
St. P. R. Co.* 80 Wis. 299; *Dugan v. C., St. P., M. & O. R.
Co.* 85 Wis. 614; *Schneider v. C., M. & St. P. R. Co.* 99
Wis. 387.

Counsel contend that plaintiff was not only subjected to
the danger necessarily incident to the performance of his
work, but was allowed to follow the negligent custom of
·other employees, and put his coat, etc., in the closet men-
tioned, without being warned or cautioned by the defend-
:ant as to the danger of getting his clothing in the gearing.
Assuming, for the purposes of this case (but without so de-
ciding), that the defendant was negligent in not having
.such gearing " securely guarded or fenced," as provided by
the statute, the question recurs whether the trial court was
.justified in holding, as a matter of law, upon the undisputed
evidence, that the plaintiff assumed the risk of the danger
·complained of. That is the question submitted by the re-
.spective counsel. In a case of personal injury decided here-
with (*Renne v. U. S. L. Co., post,* p. 305), and where the in-
.jured person was younger than the plaintiff in the case at
bar, it was held that the trial court properly submitted the
·question of the assumption of the risk to the jury, and in
·doing so charged them to the effect that if it was a danger
" known and comprehended by him, or was such an open or
·obvious danger as that, considering his age, intelligence,
experience, judgment, and discretion, he ought, in the ex-
ercise of reasonable and ordinary care, to have known and
.appreciated it, then the law " was " that the plaintiff as-

Helmke vs. Thilmany.

sumed the risk of such danger, and that he " could not re-
cover.   In that case we attempted to point out what was
meant by knowing the danger,— comprehending the danger
and appreciating the danger,— and cited numerous adjudi-
cations of this court bearing · upon the subject, and appli-
cable to the facts there presented.

Those cases seem to be fairly distinguishable from the
case at bar.   In this case there was no uncertainty; no shift-
ing conditions; no ambiguity in the facts or circumstances
or evidence.   There was nothing obscure or complex in the
situation.   The two cogwheels were near the floor, and in
plain sight.   As indicated in the statement of facts, the plaint-
iff testified that he knew there was danger around those
wheels; that, if Nolan or any one else had told him to be
careful around those wheels, he would simply have told him
what he already knew; that he had cleaned up around the
gearing that day; that he saw the gearing when he was
putting his coat on; that, if he had been facing the machine
instead of the closet at the particular moment, the gearing
would have been in plain sight, and he could have kept his
coat out of the wheels. The danger of touching or allowing
his clothes to touch the gearing was, seemingly, just as ap-
parent as it would have been to walk into an open fire, or
against a red-hot stove or furnace.   His explanation is that
he never noticed the gearing; that he never thought of it.
He had five weeks' experience as a cutter boy in the Patten
paper mill, near by, and in which he had worked at one
thing and another for more than two years.   But it is un-
necessary to repeat the evidence, which is given quite fully
in the statement.

Upon the facts thus stated, it seems to us that the case
comes within the numerous adjudications of this court which
bar a recovery.   In the *Chopin Case*, particularly relied upon
by counsel for the plaintiff, the boy was required to oil the
interior journal of the machinery while in motion.   *Chopin*

*v. Badger P. Co.* 83 Wis. 192. Here the plaintiff, while putting his coat on, unnecessarily backed up against the gearing, which he admits he knew to be dangerous.

This court has repeatedly held that the true test as to whether a minor has assumed the ordinary risks of his employment, or is guilty of contributory negligence, is not whether he in fact knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended such danger. *Luebke v. Berlin M. Works,* 88 Wis. 442; *Craven v. Smith,* 89 Wis. 126; *Casey v. C., St. P., M. & O. R. Co.* 90 Wis. 113; *Herold v. Pfister,* 92 Wis. 417; *Klatt v. N. C. Foster L. Co.* 92 Wis. 622, 627; *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615; *Larson v. Knapp, Stout & Co. Company,* 98 Wis. 178. It has also been repeatedly held that where it appears from the undisputed evidence that the defect or danger is open and obvious, and such as under the circumstances ought to have been known and comprehended by the plaintiff, then he will be held to have assumed the risk as a matter of law. *Id.* Such appears to be the case at bar, and hence the trial court correctly held that the plaintiff assumed the risk.

*By the Court.*— The judgment of the circuit court is affirmed.

WINSLOW, J. I am unable to agree with the proposition that, as matter of law, the plaintiff assumed the risk in this case, but think the question was a proper one for the jury. The plaintiff was a boy sixteen years of age, of limited experience. While putting on his coat, preparatory to quitting work, in a place provided for that purpose, the garment was drawn into the mesh of unprotected cogwheels. While he knew there was danger about unprotected cogwheels, and that he would be seriously hurt if drawn into them, I do not think that it can be said that he necessarily knew or ought to have known the danger that his coat

might be drawn or sucked into the mesh of the cogwheels. This question, in my judgment, was for the jury.

DODGE, J.   I concur in the foregoing opinion of Mr. Justice WINSLOW.