Kreider vs. The Wisconsin River Paper & Pulp Co.

KREIDER, by guardian *ad litem*, Appellant, vs. THE WISCONSIN RIVER PAPER & PULP COMPANY, Respondent.

*January 12 — June 20, 1901.*

*Master and servant: Personal injuries: Negligence: Evidence: Defective machinery: Witnesses: Adverse party: "General managing agent" of corporation: Trial: Unguarded machinery: Assumption of risk: Fellow-servants.*

1. In an action to recover damages for an injury caused by negligence, it is not error to exclude evidence tending to prove that after the employee was injured the defects in the machinery were repaired.
2. In such action it is not error to sustain objections to questions asked the manager of the defendant's mill, as to whether he had ever heard, prior to the injury in question, of any one else being hurt by the appliance in question.
3. Where there is other undisputed evidence on the same subject it is not error to exclude testimony by defendant's manager, who was not a practical machine man, as to his knowledge of the use, purpose, and necessity of a certain improved form of appliance.
4. Neither is the exclusion of such testimony error, when there is no evidence that other employers in similar businesses and in the exercise of ordinary care and prudence were in the habit of using such improved appliances.
5. An employer is not guilty of negligence merely because he does not adopt the best or most approved way and machinery. It is sufficient if, in the exercise of ordinary care and prudence, he adopts the ordinary way and machinery in use by other employers, in similar businesses.

Kreider vs. The Wisconsin River Paper & Pulp Co.

6. A witness whose deposition as an adverse party was attempted to be taken under sec. 4096, Stats. 1898, testified that he was not an officer or stockholder of defendant corporation; that he was local manager of its mill at a certain place; that the money used in that mill went through his hands; that he paid employees, looked after outside business, bought material, and conducted the correspondence relating to the mill, but that he had nothing to do with the mechanical running of the mill nor the hiring of help, and that he worked under the direction of the defendant's president, who made weekly visits to the mill. *Held*, that the witness was not the "general managing agent" of defendant, within the meaning of said sec. 4096, nor of sec. 4068, which permits the "general managing agent" of any corporation which is a party, or for whose benefit the action or proceeding is prosecuted or defended, to be examined on the trial "as if under cross-examination, at the instance of the adverse party."

[7. Whether an exception to the ruling against the reading of such deposition is available to obviate any error in excluding certain parts thereof, not decided.]

8. In an action for personal injuries received while employed in defendant's mill it is not error to exclude testimony as to the proper lighting facilities of such mill, where it appeared that the plaintiff commenced working at six o'clock in the evening of July 15, and there was nothing in the complaint or plaintiff's testimony indicating that any want of light contributed to the injury, or that the injury occurred at night, or that it was dark at the time.

9. When the plaintiff in an action for personal injuries has testified fully as to the circumstances of the accident, and other witnesses have been examined, and counsel has discussed the question of the injury, and the court, in making a ruling, has commented thereon, it is not error to refuse to allow plaintiff, on being recalled, to go over his testimony again, that being a matter within the discretion of the court.

10. Under sec. 1636j, Stats. 1898, providing that all shafting, so located as to be dangerous to employees in the discharge of their duties, shall be securely guarded or fenced, the question whether an employer is negligent in failing to guard a set-screw on a paper winder projecting nine sixteenths of an inch above the surface is for the jury.

11. Plaintiff, nineteen years of age, with some experience as a factory workman, and four and one-half days' experience, in defendant's paper mill, was injured while assisting to operate a paper winder. On being told to hold the box of the machine down while the paper was being wound, he pressed down with his hands, and, that being

Kreider vs. The Wisconsin River Paper & Pulp Co.

insufficient, put his whole weight against the box by leaning over it, his chest resting on his elbows, in which condition his clothing was caught by a set-screw projecting nine sixteenths of an inch from a shaft which was revolving toward him at a great rate of speed, and he was injured. There was evidence that the nature of the work had been explained to him by the foreman, and that the plaintiff had noticed that the shaft was not moving smoothly. *Held*, that the plaintiff assumed the risk and could not recover. WINSLOW, J., dissents.

12. The fact that the plaintiff was told to hold the box down by a co-employee does not affect the employer's responsibility, the latter not being responsible for any alleged misconduct of a fellow-servant in that respect.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Brown & Pradt*, attorneys, and *Barber & Beglinger*, of counsel, and oral argument by *Fred. Beglinger*.

For the respondent there was a brief by *C. H. Van Alstine*, and oral argument by *Chas. M. Morris*.

CASSODAY, C. J.   This is an action to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant, July 15, 1896, and at work upon a paper winder, being a machine which wound the finished paper as fast as it was manufactured upon spools or bobbins, and consisted of two upright standards or supports about forty inches in height, securely fastened to the floor opposite each other, and about ten feet apart. Upon the upper end of each such standards there was a shaft box or socket about two and one-half inches wide and four inches long, each box being in two pieces, with semicylindrical grooves, and a shaft about two and one-fourth inches in diameter running from one standard to the other, about forty inches from the floor, the ends of which rested in the lower halves of the boxes or sockets, and the upper halves of such boxes

rested on the lower halves and the journals of the shaft, the upper halves being hinged at one end to the lower halves and held in place at the other end by dogs or catch buttons. After loosening the dogs or catch buttons, the upper halves could be raised, so as to allow the shaft to be lifted out of the lower halves of the boxes. Each end of the shaft projected outward some from the standards, and had various collars at the end of the shaft to keep it from lateral motion. The collar at the end of the shaft on the right-hand of the attendant (the plaintiff at the time of the injury) was about three fourths of an inch thick, and close up to the boxes, and movable, and held in place and kept tight by means of a set-screw with a square head, being a small steel bolt with threads upon it passing through the collar and against the shaft, which projected nine sixteenths of an inch above the surface of the collar. The set-screw was a few inches distant from the standards, and was used to release or loosen the collar from the shaft by turning it with a wrench. The shaft, when winding paper, had on it a spool of wood or iron, on which the paper was wound, and revolved at various rates of speed,— from 106 to 475 revolutions per minute,— the speed being decreased as the spool filled. The end of the shaft at the attendant's right hand extended about one foot beyond the box. The shaft was operated by means of belts and pulleys connecting it with the other machinery of the mill. The negligence alleged is to the effect that the shaft was not properly and securely fastened and held in place at the bearing points, so as to revolve smoothly and evenly at all times, but would run irregularly and unevenly, and at times shake and jump; that the shaft gearing and set-screw were uncovered, and not safeguarded or fenced in, and the set-screw was not countersunk; that the plaintiff was ignorant of the presence of the set-screw and its projection, and the dangerous character of the shaft and its bearings, and

the defendant negligently failed to inform him of such dangerous machine, but ordered and directed him to work and attend the paper on the spool of such revolving shaft; that while so working, and while the shaft was in motion, the plaintiff's clothing was caught by the shaft and set-screw, and he was thrown with great force and violence around the end of the shaft and against the floor and the standard, and badly injured. The defendant answered by way of admissions, denials, and counter allegations, and, among other things, to the effect that the shaft and set-screw were so located and used as to make it impracticable to guard or fence the same. Upon the trial, and at the close of the testimony on the part of the plaintiff, the court granted a nonsuit, and from the judgment entered thereon the plaintiff brings this appeal.

It is undisputed that the manner of using the winder was to the effect that four men were employed on the machine of which the winder was a part, the machine tender and three others; that one of the men arranged the paper so that it would properly wind around the spool; that the shaft was then set in motion, and was kept in motion until the spool was full; that, when the spool was full, the winder was stopped, and the upper halves of the boxes were raised and thrown back, and the shaft lifted out and rolled on the paper roll down a plank to the floor; that the set-screw was loosened before or after the shaft was lifted out of the boxes, and the collar was removed, so that the shaft might be pulled out of the spool; that the shaft was then pulled out of the spool, and another spool was placed thereon, and it was put into the boxes again, and the collar and set-screw were adjusted, and the paper winder was again ready for its work; that it took a little less than one hour to fill a spool.

1. We perceive no error in excluding testimony tending to prove that some time after the injury the defendant

caused the set-screw to be countersunk. This court has repeatedly held that evidence tending to prove that defects in machinery or a highway have been repaired after an injury is inadmissible in an action to recover damages for such injury. *Lang v. Sanger*, 76 Wis. 71, 75; *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 202; *Phillips v. Willow*, 70 Wis. 6; *Richards v. Oshkosh*, 81 Wis. 226; *Barrett v. Hammond*, 87 Wis. 654. The first, third, fourth, and fifth errors assigned come within the principles stated, and, for the reasons given, are overruled.

2. Error is assigned because the court sustained an objection to a question put to William T. Whiting — a witness on the part of the plaintiff, and the defendant's local manager of the mill in question — as to whether he had ever heard, prior to the injury, "of any one else being hurt on this set-screw." This court has repeatedly held that evidence tending to prove the fact of such prior injury was inadmissible. *Phillips v. Willow, supra; Richards v. Oshkosh, supra; Barrett v. Hammond, supra.* Certainly, it was more objectionable to prove that he had heard some one say that some one else had been hurt on the set-screw. Of course, the plaintiff was at liberty to prove, if he could, by legitimate evidence, that the set-screw was dangerous; and that the defendant had notice of it prior to the injury in question. For these reasons, the eighth error assigned must be overruled.

3. After the same witness had testified that he did not claim to be a practical machine man, and was not a practical machine man, he was asked by the plaintiff's counsel these questions: "Did you ever see countersunk set-screws? . . . What was the object of countersinking?" The objections to such questions were sustained, and we perceive no error in such rulings. It is admitted in the answer that the set-screw in question "was not countersunk." The plaintiff's witness Barnes, "a practical machinist," was allowed to tes-

tify that "the countersinking of a set-screw is one that is let
into the collar so that the outer circumference of it is smooth,
nothing projecting over it, so that the set-screw does not
project over the collar;" that "it is done with a drill with
a center in it," and costs seventy-five cents; and that the
object of it was to prevent anything coming in contact with
it from being caught. Such evidence is undisputed. There
is no evidence in this case that other employers of ordinary
care and caution, engaged in similar business, were in the
habit of countersinking such set-screws. The defendant is
not to be held guilty of negligence merely because it did not
adopt the best or most approved way. It was sufficient for
the defendant to adopt the ordinary way and machinery in
use by other employers in similar business in the exercise of
ordinary care and prudence. *Innes v. Milwaukee*, 96 Wis.
170, 174, and cases there cited.

4. Most of the errors thus assigned arose upon the testi-
mony taken on the examination by the plaintiff of William
T. Whiting, at Stevens Point, nearly two years before the
trial, as an adverse witness, under sec. 4096, Stats. 1898,
amended by ch. 29, Laws of 1899. That section provides
that "the examination of the president, secretary or other
principal officer or general managing agent" of a private
corporation, when a party to an action, may "be taken
by deposition at the instance of the adverse party in any
action or proceeding, at any time after the commencement
thereof and before judgment." To the reading of the dep-
osition taken upon such examination the defendant ob-
jected on the ground that the witness, Mr. Whiting, was
then in court, and that there was nothing to show that he
was one of the persons mentioned in the statute authorizing
the examination of parties as an adverse witness. The ob-
jection was overruled, and the defendant excepted. The
witness William T. Whiting in such deposition testified to
the effect that he was not an officer or stockholder of the

Kreider vs. The Wisconsin River Paper & Pulp Co.

defendant corporation; that he was the general manager of the company,— that is to say, he was the local manager of the mill, and had the local management at that place, but had nothing to do beyond that; that the officers of the company were George A. Whiting, president, R. C. Russell, vice-president, C. A. Babcock, secretary and treasurer; that Babcock and Whiting lived at Neenah, and Russell at Oshkosh. After completing the reading to the jury of the deposition of William T. Whiting so taken, the plaintiff called him for further examination, and he testified to the effect that he had heard his deposition, so taken, read to the jury; that he was the same person who gave that deposition; that he was the manager of the mill,— the local manager,— and was in July, 1896; that he was not the general managing agent of the defendant; that the money that was used in the mill went through his hands, buying supplies, paying off men, and looking after the outside business, buying pulp, looking after houses and real estate belonging to the company; that he conducted the correspondence relating to the mill; that he did not have anything to do with the direct running of the mill,— the mechanical running of the mill,— and never had; that he was not the paper maker; that Mr. Partington was hired for that purpose, and that he hired the help and discharged them; that George A. Whiting, president of the company, lived at Neenah, the home of the company, and had the management of the mill at Stevens Point, over him; that whatever orders he gave as to the machinery and stock, and what should be manufactured, was done under his direction, and his orders were obeyed; that George A. Whiting was there every week, and gave his instructions, and he and Partington carried them out. The defendant objected to further examination of the witness by the plaintiff's counsel on the ground that, as the witness was not the president, secretary, or any principal officer, or general managing agent of the defendant, he was not

subject to such examination upon the trial, "as if under cross-examination," at the instance of the plaintiff, as "the adverse party," as prescribed in sec. 4068, Stats. 1898. The court sustained the objection, and the plaintiff excepted. The court then granted the plaintiff's request to further examine the witness as to his qualifications; and he did, but elicited no more favorable testimony. The court again sustained the objection to the competency of the witness under sec. 4068, Id., but did not rule that he was not competent as a witness generally. The plaintiff excepted, and asserted that he did not wish to call him as a general witness. We are constrained to hold that such objections were properly sustained. The witness was called by the plaintiff, and he had no right to examine him "as if under cross-examination." He was not the "general managing agent" of the defendant, within the meaning of sec. 4068 nor sec. 4096. Each of those sections "refer to an agent having a general supervision over the affairs of the corporation." *Upper Miss. Transp. Co. v. Whittaker,* 16 Wis. 220; *Carr v. Commercial Bank,* 19 Wis. 272; *Wheeler & W. Mfg. Co. v. Lawson,* 57 Wis. 404. It follows from what has been said that the reading of the deposition of William T. Whiting, under the circumstances stated, was improper, and the objection to the same should have been sustained; and, possibly, the exception to such ruling might be available to obviate any supposed error in excluding certain parts of that deposition, but it is unnecessary to determine the question in this action.

5. In the deposition of William T. Whiting, so taken, he was asked these questions by the plaintiff's counsel: "How was your mill lighted?" "How was it as to the number of lights you had?" Error is assigned because the objection to each of those questions was sustained. There is nothing in the complaint nor in the plaintiff's testimony indicating that any want of light contributed to the injury. It is not even alleged that the injury occurred in the night, and we

find no evidence that it occurred in the night, nor that it was dark at the time. The plaintiff testified that his time for commencing work was six o'clock in the evening. That was long before dark on July 15, 1896, when the injury occurred. We find no error in sustaining the objection to such questions.

6. Error is assigned because, after the plaintiff had testified fully as to the manner in which his clothes were caught and he was injured, and after a large number of other witnesses had been sworn and examined, and after counsel had discussed the question, and the court, in making a ruling, had commented upon the fact, counsel recalled the plaintiff, who testified that he had overalls on at the time of the injury which came way up to his chest, close to his neck, about four inches from his neck, fastened up with buttons; and that he had heard the witness who had just testified. He was then asked by his counsel whether the set-screw on the collar caught in his overalls, and also whether he felt his overalls being torn in any place from the moment he was caught; and error is assigned because the court sustained an objection to each of such questions. The trial court certainly had some discretion as to allowing the plaintiff to go over his testimony again under the circumstances stated. We perceive no error in sustaining such objections.

7. Error is assigned because the court granted a nonsuit and dismissed the action. It is contended that the admitted fact that the set-screw projected nine sixteenths of an inch above the surface of the collar constituted actionable negligence. Counsel for the plaintiff cite two cases which have some bearing upon the question. In the Missouri case cited the shaft was twelve feet long, six inches in diameter, and about ten inches above the floor, and covered, except for a space of about three feet at the end nearest the turntable. The collar at that end of the shaft was about an inch and a half thick, and the set-screw projected above it about two

inches, and the shaft revolved 250 revolutions per minute. On the first trial a nonsuit was granted, but the judgment thereon was reversed by the appellate court on the ground that the danger was partly hidden. *Dowling v. Gerard B. Allen & Co.* 6 Mo. App. 195. That judgment was affirmed by the supreme court. 74 Mo. 13. The next trial resulted in a verdict for the plaintiff; and the judgment thereon was reversed, for error, by the supreme court. 88 Mo. 293. Upon a retrial the plaintiff recovered a verdict and judgment, and the same was affirmed by the supreme court on the ground that the plaintiff was an inexperienced youth of seventeen years of age, and was ignorant of the danger, and had received no warning. In the Vermont case cited [*Geno v. Fall Mountain P. Co.* 68 Vt. 571] the plaintiff was sixteen years of age. On the night of the accident he was instructed by the foreman to oil the countershaft, which propelled the machinery and was fastened to the ceiling eight or ten feet above the floor. In attempting to do so he walked up over the screens, and reached his hand to the bearings; and, while attempting to oil the countershaft, the sleeve of his frock was caught upon a set-screw, not countersunk, but projecting three fourths of an inch above the surface of the collar, and he was seriously injured. The court sanctioned a charge to the jury that:

"If the defendant, in the use of this set-screw in the place where it was used, was in the exercise of the care and prudence that prudent men are accustomed to exercise in like circumstances, then the defendant is not liable on account of negligence in using this set-screw in that place, and for the purposes it did use it. The employer is not bound to use the newest and best appliances for his employees, but he performs his duty when he furnishes those of ordinary character and reasonably safe, and the former is the test of the latter." *Geno v. Fall Mountain P. Co.* 68 Vt. 571.

The particular fact which the court appears to have emphasized was whether the use of the set-screw "in the place

Kreider vs. The Wisconsin River Paper & Pulp Co.

where it was set was reasonably safe in view of the fact that the plaintiff was required to oil the bearings upon the countershaft, and was liable to come in contact with the head of the set-screw." Pages 576, 577. The defendant cites a Massachusetts case where the plaintiff, a boy sixteen years of age, worked in a room where was a horizontal shaft twelve feet long and about one foot above the floor, resting on bearings at each end, to which power was communicated by a belt from an upper shaft. To prevent longitudinal vibration of the lower shaft, an iron collar was fastened to one end of it by a set-screw, the end of which projected half an inch above the surface of the collar. And the court "held that there was no evidence that there was a breach of any duty on the part of the defendant which he owed to the plaintiff. *Held*, also, that the defendant was not bound to box the shaft, and that the fact that the collar could be secured to the shaft without a projecting screw or nut was not evidence from which the jury would be warranted in finding that the defendant was not justified in using the device." *Hale v. Cheney*, 159 Mass. 269. In a later case in the same state it was held that:

"If the proprietor of a factory has in use a projecting set-screw for holding the collar on a shaft upon which is a pulley, although there is a safer kind of set-screw in common use, he owes no duty to a person entering his employ to box the pulley or shaft, or to change the set-screw for a safer one." *Rooney v. Sewall & D. C. Co.* 161 Mass. 153.

The case at bar differs in some respects from any of the cases cited. In this state we have a statute which declares that "all belting, shafting, gearing, hoists, fly wheels, elevators, and drums" in every place where persons are employed to perform labor, "so located as to be dangerous to employees in the discharge of their duty, shall be securely guarded or fenced" by the owner or manager thereof. Sec. 1636*j*, Stats. 1898. That statute has frequently received consideration from this court. *Thompson v. Johnston Bros.*

*Co.* 86 Wis. 582; *Thompson v. Edward P. Allis Co.* 89 Wis. 528; *Guinard v. Knapp-Stout & Co. Company,* 95 Wis. 485; *Powalske v. Cream City Brick Co., ante,* p. 461. Most of these cases leave it to the jury to say whether the unguarded shafting or gearing was so located as to be dangerous. Of course, where there is no room for conflicting inferences, it is for the court. We cannot hold, as a matter of law, that the defendant was not guilty of negligence by reason of such projecting set-screw being unguarded.

8. But the cases just cited, and others which might be cited, also hold that such statutes do not give a right of recovery in any case where the plaintiff has assumed the risk, or been guilty of contributory negligence. *Helmke v. Thilmany,* 107 Wis. 222, and cases there cited. At the time of the injury the plaintiff lacked one month and twelve days of being nineteen years of age. He had, prior to the accident, worked for two or three months in a sash, door, and blind factory in Wausau, piling up stiles and moldings. He next worked, prior to the accident, for five or six months in feeding excelsior machines in a mill in Wausau. He fed eight such machines in a row, each machine being driven by steam power, and having sharp knives and scissors which cut the wood into excelsior. He next worked in the Stevens Point mill in question. After he had worked there on the machine in question for four days and a half, he was injured. The plaintiff testified to the effect that, in pursuance of his talk with the foreman in the morning, he went with his dinner pail to begin work at six o'clock in the evening; that the foreman then told him that the men at the machine would tell him what to do, and to obey them; that they and the foreman showed him what to do,— to oil up the boxes on this paper machine every half hour; that they also showed him that he was to clean out the screens, and also oil other boxes every half hour; also to take paper

out while the machines were in motion, and clean out under the machine; that a part of his employment was to bring spools, and place them ready for use near the machines; that the spools were put on the shaft, and fastened there, so as to revolve with the shaft; that there might be fifty spools there every night; that when the spool was full the machine was stopped; that the shaft then, with the roll of paper upon it, was taken from the upright down onto the trucks or floor by means of wooden blocks and a lever; that three or four were engaged at such work,— two at each end; that they all helped take out the shaft; that he had an iron rod, which he twice before held against the center of the paper while the machine was in motion and the shaft revolving; that such was the character of the work he did while there; that just before he was hurt he had that iron rod in his hand, and was holding down the center of the paper; that the second hand told him to stop doing that, and hold the box on his right hand down; that he then went and pressed down with one hand on the shaft; that he went up to the box on the outside of the standard; that he then pressed down with both hands on it; that that not being enough, he put his whole weight on the box by leaning over it, his chest resting on his elbows, pressing down on the box, but that the box did not touch his body at all; that the shaft was revolving towards him at the time; that the first thing he knew he was "caught in the blouse of" his "overalls," and the paper was coming over the top of the shaft, and winding; that the first thing he knew he "was whirling around the shaft;" that he tried to tear himself loose, but could not do it; that he felt it tear his flesh, but did not know what happened after that; that the center line of his chest was about five inches from the end of the shaft when he was hurt, and that the end of the shaft projected about a foot beyond the standard; that at the time he was hurt

his body was on the right side of the collar of the box — of the box; that before he was injured he noticed that the shaft was bobbing up and down; that he had not noticed it before while he worked there; that the paper had been running on the spool about ten minutes before he was hurt, and the shaft was running at a high rate of speed. Such is the plaintiff's account of the accident. Since the set-screw was loosened every time a spool was filled, and since it took less than an hour to fill a spool, and since the plaintiff had worked at the business for four days and a half before he was injured, it is idle to claim that he did not know of the existence of the set-screw, and that it projected above the surface of the collar. Since the collar was close up to the box on the top of the standard, and the end of the shaft extended about a foot beyond the standard, it is difficult to tell, from the plaintiff's version, whether his clothes were caught by the end of the shaft or by the set-screw. But the view we have taken of the case makes it immaterial.

"This court has repeatedly held that the true test as to whether a minor has assumed the ordinary risks of his employment, or is guilty of contributory negligence, is not whether he in fact knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended such danger." *Helmke v. Thilmany*, 107 Wis. 224, and cases there cited. "It has also been repeatedly held that, where it appears from the undisputed evidence that the defect or danger is open and obvious, and such as, under the circumstances, ought to have been known and comprehended by the plaintiff, then he will be held to have assumed the risk as a matter of law. *Id.* Such appears to be the case at bar, and hence the trial court correctly held that the plaintiff assumed the risk." *Id.*, and cases there cited. *Williams v. J. G. Wagner Co., ante*, p. 456.

It is no excuse that the plaintiff was told to hold down the box or shaft by his fellow-servant. The defendant was not responsible to the plaintiff for such alleged misconduct

of his fellow-servant. *Prybilski v. N. W. C. R. Co.* 98 Wis. 413; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 581.

*By the Court.*— The judgment of the circuit court is affirmed.

WINSLOW, J. I respectfully dissent in this case, because I do not think it can be said, as matter of law, that the appellant assumed the risk.