## Ernst Heldmaier v. Robert Cobbs.

96 315
a195s 172

1. EMPLOYER AND EMPLOYE—*Employer's Duty Where He Provides a Place for His Employes to Eat, etc.*—Where an employer provides a place for his employes to eat, or directs or permits them to go to a place for that purpose, he owes to them the same duty of protection from danger there, that he does at the place where such employes work.

2. FELLOW-SERVANTS—*Foremen and Helpers at Steam Drills.*—Under the facts of this case a fireman and a helper at a machine drill run by steam and used in blasting rock in the construction of the Chicago Drainage Canal are not to be regarded as fellow-servants.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Will County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

J. L. O'DONNELL, attorney for appellant.

JAMES R. FLANDERS and PETER SHUTTS, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by appellee against appellant as surviving partner of the firm of Heldmaier & Neu, to recover for

personal injuries claimed to have been received by the former when in the employ of the latter, while at work on the Chicago Drainage Canal at or near Joliet.

The original declaration charged that on January 11, 1899, appellee was working on the Chicago Drainage Canal in the employ of Heldmaier & Neu; that while so engaged, Heldmaier & Neu, by certain orders of their servants, not fellow-servants of appellee, negligently and carelessly allowed and permitted certain explosive caps, used for the purpose of exploding dynamite in the work of excavation on said canal, to be carelessly, negligently and improperly exploded and discharged, whereby plaintiff, while in the exercise of due care, was injured. An additional count was afterward filed alleging that said Heldmaier & Neu used dynamite for blasting purposes and exploding caps to explode said dynamite; that it was their duty to use due care to keep the place where appellee was employed, reasonably safe; that disregarding said duty they permitted and allowed certain explosive caps carelessly and negligently to be kept and stored in and about the place where plaintiff was employed; that said caps were discharged and exploded by coming in contact with live coals and fire drawn out from a fireplace in a boiler house used by them, whereby appellee, while in the exercise of due care in his own behalf, was struck and injured.

The general issue was pleaded, and the jury before whom the case was tried, found for the plaintiff and assessed his damages at $1,250. By special verdict the jury also found that plaintiff was at the time he was injured in the employment of Heldmaier & Neu and engaged in and about the work and business of said firm. A motion for a new trial was overruled and there was a judgment on the verdict from which the defendant below appeals.

It appears from the evidence that Heldmaier & Neu in the prosecution of their work on the drainage canal, used drills operated by steam. The steam was furnished from an upright boiler located in a small boiler house upon the bank of the canal. A fireman was in charge of the boiler

and each drill was operated by two men, one of whom was the drill runner and the other a helper. At the time of the accident appellee was helper to a drill runner named Dandridge. The drills ran day and night, appellee being on the night run. The night men worked from 6:30 P. M. until 11:30 P. M., when they stopped for one hour, which they called the "dinner hour," and then resumed work again, quitting at 5:30 A. M. Appellee and Dandridge were in the habit of going into the boiler house, which was eight or nine feet square, during the dinner hour, and sitting on a bench, nailed to the wall near the door, while eating their dinner. During that time the fireman in charge of the boiler cleaned his fire by pulling out ashes and clinkers with a long hoe.

On the night in question appellee preceded Dandridge to the boiler house and was eating his dinner when an explosion occurred, which caused the injury. By the accident the sight of one of appellee's eyes was destroyed and the other injured. Parts of fulminating caps were removed from the eye and the person of appellee similar to those used by appellant in the explosion of dynamite. These caps, no doubt, fell from a shelf or frame work over the doorway upon the hot cinders pulled out by the fireman.

The principal reason urged for reversing the case by appellant is his claim that appellee was not at the time he was injured, engaged in the work and business of appellant. It appears, however, from the evidence of appellee, Dandridge, and a drill runner named Baumgartner, that they were directed by Wernle, the night foreman, to put their tools, dinner and coats in the boiler house; that certain fittings, tools, and the oils necessary to be used about the drills were also kept there; that they were accustomed to eat there by the consent, if not by the actual direction of the foreman. Appellee, therefore, had a right to be at the engine house at the time in question and was there by consent of appellant. While he was not actually at work at the time, yet he was still in the employ of the master, in the sense that his business kept him in that vicinity. He was

not in the position of a mere visitor, as one who was not connected with the business would have been. Under the circumstances we think the master owed him, at the time of the accident, the same duties that he would have owed him had he then been actually at work at the drill. Appellee had a right to expect that the boiler house to which he was directed to go would be reasonably safe, and that it was not so, is evidence that appellant was guilty of negligence.

It is further insisted by appellant that the evidence does not sustain the charge that appellant carelessly and negligently permitted the fulminating caps to be stored about the engine house. The preponderance of the evidence, however, shows that the fireman and the superintendent knew that they were being kept on the shelf in the boiler house.

It is further claimed by appellant that appellee can not recover because he was injured through the carelessness of a fellow-servant. We do not think that the evidence shows any such relations between the fireman and appellee as to constitute them fellow-servants, and of course the ruling could not apply to the superintendent, who was also guilty of negligence in permitting the caps to remain in the boiler house. No reason has been presented or appears to us warranting a reversal of this judgment, and it is accordingly affirmed.

Mr. Presiding Justice DIBELL took no part in the decision of this case.