## No. 14,366.

### SARAH M. WILSON vs. BANNER LUMBER CO., LIMITED.

#### SYLLABUS.

The right of action to recover damages for the death of a minor child survives in the father or mother or *"either of them."* If the wife has, previous to the death of the child, obtained a divorce from her husband and has the care of the minor children, she can bring the action without his authorization.

Her right to recover the amount of the damages is not affected by the fact that she remarried prior to the accident.

Where an employer returns his laborers to their homes by means of a hand-car a number of miles from work, after working hours, the employer is liable in damages for an accident which happened while so returning home, due to the negligence of the foreman in charge of the men, even though the accident happened after the day's work had been completed.

A water.boy is not a fellow servant of a section foreman within the meaning of the law governing the negligence of employes.

**A**PPEAL from the Twenty-fifth Judicial District, Parish of Tangipahoa—*Reid, J.*

*Carter & Brock,* and *Kemp & Kemp,* for Plaintiff, Appellee.

*O. P. Amacker, James Houston Price* and *Clay Elliot,* for Defendant, Appellant.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff sues to recover ten thousand dollars from the defendant as damages for the death of her son Oscar Duncan.   She is the divorced wife of Martin Duncan and the present wife of Wright Wilson.

Defendant, in the first place, interposed a bill of exceptions on the ground that plaintiff has no right to bring this suit because Martin Duncan, her former husband, is not a party to the suit and that plaintiff, since her divorce, having remarried, her status has so changed that she cannot bring this suit.   The contention on the part of the defendant is that the father's name is always before the mother.   That

if one has the right to sue, it is vested in the father, and not in the. mother.

By the statute of 1884, No. 71, the right of action survives in the name of the father and mother or either of them. The language of the statute includes both of them. The marriage relations having been dissolved, the mother can, without being joined by her former husband. to authorize her, bring suit for damages. The statute did not single out the father as the only one in whom the right survived, nor did it look to the necessity of suing in the name of both, but expressly states that the "father and mother" or "either of them." Having used the words. "either of them" to express the legislative will, the courts are without authority to exclude the mother from whatever right the act in question. may confer.

The mother sued for the divorce in question. It was granted at her instance, and we infer that she was by the decree left in charge of the minor children and that the right survives in her only in case a divorce is obtained against the father. Be that as it may, the mother· has the right to stand in judgment after the divorce has been obtained and she is not cut off from the right of recovering because she has. obtained a divorce, nor because she became the wife of another man after she had obtained a divorce.

Defendant, in the second place, plead the exception of no cause of action.

Defendant directs our attention to plaintiff's averment that her son, with his co-laborers, were on their way home after the labor of the day was over, excludes the idea that they were in defendant's service at the· time he met his death; that the contention that defendant is liable for· acts of men not alleged to have been engaged in doing defendant's work at the time the act was done cannot be supported.

The laborers of defendant, among them defendant's son, had to be taken to a distance of about eighteen miles every day to their place of work and return. They were conveyed morning and evening on defendant's hand-car. This mode of conveyance had to be resorted to· in order to obtain the labor at the place needed. There was at least,. we take it, acquiescence of defendant in permitting the laborers to ride on the hand-car when returning home as they were returning on this. occasion.

The defendant further contends, again by way of exception, that

plaintiff's son was the fellow-workman of the section foreman who had charge of the hand-car which collided with the animal on the road. They were not, in our view, as relates to work in defendant's service, fellow-servants. One was in charge of men, including plaintiff's son, and received larger wages than those who worked under him. The son of plaintiff was a water-boy and was paid fifty cents a day for his work. He was employed by the section foreman who was in charge of the hand-car, who had authority to employ the gang of men who worked under him. He (plaintiff's son), was riding, as customary, with other hands returning in the evening after the day's work had been finished. The section foreman had control of the hand car and the direction of the men who rode on this car, after the day's work returning to their homes. The master, as relates to safety in running, owed some duty to the workmen and the act of its employee, when the accident happened, was not the act of plaintiff's son, but the act of the master. We turn to the question of fellow-servant in the order of the case.

A fellow-servant ceases to be such and becomes a vice-principal when he is clothed with power of control and direction, and, in the exercise of such power, is entrusted with the performance of some positive duty owned to other employees and which has devolved on him from the master.  Barrows on Negligence, p. 131.

"As in the case of the conductor of a train, the foremen of section men, the foremen of railroad yards, the servant exercising the supervision, represents the master in the performance of a master's duty, and hence by his negligence the master may become liable."  Law on Negligence, Thomas, p. 868.

The exceptions, we think, were properly overruled by the District Court.

This brings us to a consideration of the merits and primarily to the facts of the case.

In August last, plaintiff's son was violently thrown from the hand-car which collided with a cow on the track and was instantly killed and the foreman was severely wounded. There were eight or ten men on the car and it was running down a grade of about four feet to the hundred feet. There was a curve on the hill and usually the cars were run down this hill at a slow rate of speed. The view was not obstructed from the top of the hill to the place where the cow was struck, and the

distance was about two hundred yards, and the animal was in open view of the men on the hand-car from the time it turned the grade to the place of the accident. In other words, it could have been seen a distance of about two hundred yards before it was struck. This animal was at the lower edge of what the witnesses refer to as the dump and started slowly to walk to and on the track. The distance between the lower edge of this dump and the track was about ten feet. It was at this time that the men on the car attempted to drive away the cow by hallooing at it, but in this they entirely failed, as it continued to cross at some little distance in front of the car until it was struck, and it was also killed. From the testimony, we glean that in coming down that hill it was the part of prudence and good judgment to run slowly and to keep the car well in hand.

The violence of the impact, as shown by the result, shows, we think, that on this occasion, the machine was not well in hand and from the testimony we infer that the speed was faster than it should have been down the grade in question.

We infer that even after they began hallooing to frighten the cow off, if the car had been under complete control, it would have been possible to stop it in time to avoid loss of life. The testimony creates the impression that ordinary care was wanting in this instance. On these men went on their way home through curves and cuts and were perhaps slow about stopping for anything. This was innocent enough, but not consonant with rules and usage which it is well to observe for the sake of safety and to avoid accidents.

Defendant controverted this view of the case and called only one witness, the section foreman, whose testimony is at variance with that of plaintiff's witnesses.

The members of the jury in all probability were familiar with the locality, knew the witnesses, and heard them testify. We have not found that they erred in finding a verdict for the plaintiff.

The boy killed was sixteen years of age, his wages were very little, and we infer that he contributed very little, if anything, to the support of his mother. After majority the obligation to hand over his wages to his mother would have come to an end. At twenty-one years of age he would then have owed only alimony; the alimony of the son to the mother is never large.

For these reasons, we have concluded to reduce the amount of the verdict to two thousand dollars.

For reasons assigned, it is ordered, adjudged, and decreed, that the judgment appealed from is amended by reducing the amount of damages from three thousand three hundred and thirty-three and 33-100 dollars, with legal interest, to two thousand dollars, with legal interest thereon from time set out in the judgment amended.

It is further decreed that plaintiff and appellee pay the costs of appeal.

Rehearing refused.