WABASH RAILROAD COMPANY *v.* ERB.

[No. 5,164. Filed April 6, 1905. Rehearing denied June 28, 1905. Transfer denied December 7, 1905.]

1. PLEADING.—*Complaint.*—*Railroads.*—*Wilful Injuries.*—A complaint showing that plaintiff, while riding home on a railroad velocipede furnished by the defendant railroad company, was "carelessly and negligently run down" by a switch engine; that no notice of the approach of such engine was given until it was within seventy-five feet of plaintiff; that the persons in charge of such engine had a clear view of him for a half-mile, and after

seeing him had time to stop the engine before the collision; that such employes "wantonly and wilfully" caused such accident, and failed to exercise ordinary care and caution, fails to state a cause of action for a wilful injury.  p. 654.

2. RAILROADS.—*Master and Servant.—Employers' Liability Act. —Employe Riding Velocipede on Track After Work.*—An employe of a railroad company riding on a velocipede on the track at the request of such company, after the completion of his day's work for such company, merely for his own accommodation, is not an employe within the meaning of the employers' liability act (§7083 Burns 1901, Acts 1893, p. 294, §1) rendering the master liable for the negligence of other employes in certain cases.  p. 654.

3. SAME. — *Master and Servant. — Negligence After Relation Ceases.*—Where a servant is injured by the master after his relation as servant has ceased and the circumstances are such that a stranger could recover, such servant may recover.  p. 659.

4. SAME.—*Licensees.—Trespassers.*—A railroad company owes no duty to a trespasser or a mere licensee to keep its premises safe.  p. 659.

5. SAME.—*Servant Riding on Velocipede.—Invitation.—Licensees. —Negligence.*—A servant of a railroad company riding home on a velocipede furnished by such company for such purpose is not a trespasser nor a mere licensee, and such company owes him the duty not to injure him through negligence.  p. 660.

6. TRIAL.—*Interrogatories to Jury.—Variance.—Negligence.*— Where a complaint alleges negligence as the cause of plaintiff's injuries it is not necessary that the answers to the interrogatories show wilfulness.  p. 660.

7. RAILROADS.—*Servant Riding Velocipede on Track.—Duty.*—It is the duty of a railroad company to use ordinary care to avoid injuring an employe riding home, after his day's labor, at such company's request, on a railroad velocipede.  p. 661.

8. LICENSE.—*Consideration.—Railroads.*—A consideration is not essential to create a valid license to use a railroad track.  p. 661.

From Huntington Circuit Court; *James C. Branyan,* Judge.

Action by John Erb against the Wabash Railroad Company. From a judgment on a verdict for plaintiff for $3,000, defendant appeals.  *Affirmed.*

*J. Fred. France* and *Stuart, Hammond & Simms,* for appellant.

*Lesh & Lesh* and *Branyan & Feightner,* for appellee.

BLACK, J.—In the appellee's amended first paragraph of complaint against the appellant it was shown, after preliminary averments, that from May 15 to October 2, 1902, the appellee was an employe of the appellant's, working in the bridge building department; that on the day last above mentioned he worked for the appellant on what was known as the Belden bridge, which was a short distance west of Andrews, Indiana, at which time his home was at Huntington, Indiana, where his family resided; that Huntington was on the line of appellant's railroad, and about seven miles east of the place where he was working on the bridge; that in the evening of that day, while returning from the place where he had been working on the bridge to his home at Huntington, on a railway velocipede furnished to him by the appellant for that purpose, which he was at the time using at the instance and request of the appellant, he was carelessly and negligently run down and struck by a locomotive, commonly designated as a switch engine, at the time under control and operation of the appellant; that he was so struck by the engine at a point on the line of the appellant's railway about one and one-half miles west of Huntington, while proceeding eastward on the velocipede; that while going eastward on the velocipede, and propelling it in the usual manner, the locomotive, drawing a tender, a steam shovel and a caboose, under charge of the appellant's employes, approached from the rear of the appellee, or from the west, at the rate of sixty miles per hour; that no notice was given the appellee, by the sounding of the whistle, ringing of the bell, or otherwise, of the approach of the locomotive, until it had reached a point within about seventy-five feet of the appellee, at which place the employes of the appellant in charge of said engine caused the whistle to sound, whereupon the appellee instantly undertook to throw himself from the velocipede to the side of the

road, so as to avoid being struck by the engine, but on account of the high speed of the locomotive and its nearness to him at the time said notice was given him of its approach as aforesaid, which was the first knowledge he had of the approach thereof, he was unable to get out of the way, and thereupon was struck by the engine and thrown some distance to the south side of the track, and was thereby maimed, bruised and injured in his limbs and body to such an extent as to render him temporarily unconscious and to require him to be confined in a hospital for treatment several months thereafter. His injuries were described, and it was further alleged that said injuries were caused by the negligence of appellant, in this: That said locomotive at the time of the accident was unequipped with any guard; that said accident occurred in daylight, and said employes in charge of said engine had a full and unobstructed view of the appellee for a distance of about one-half mile before reaching the point where he was struck, and after seeing him had time to avoid the accident, by giving him notice of the approach of the train by the ringing of the bell or the sounding of the whistle, or by slacking the speed thereof in time to enable him to get off the track without injury, but failed to sound the whistle, or in any manner to notify him of the approach of the engine, until too close to him to enable him to get out of the way of the train, as aforesaid, "and they failed and neglected to reduce the speed of said train, or to do anything to avoid said injury or accident, and were thereby guilty of gross negligence; that said employes wantonly and wilfully caused said accident; that, after realizing plaintiff's perilous position, they failed to exercise ordinary care and caution to avoid the same." After stating the extent of appellee's physical injury, it was alleged "that he has been damaged by said negligence of the defendant in the sum of," etc.

The appellant's demurrer for want of sufficient facts to this amended first paragraph of complaint having been

overruled, it is earnestly contended on behalf of the appellant that it does not show wilful injury, and that it appears therefrom that the appellee was either a licensee or a trespasser on the railroad track, and therefore it is claimed that the appellant was not responsible for his injury.

The pleading must proceed upon some consistent theory, and it must be good, if at all, either as a complaint for injury wilfully inflicted, or as a complaint for

1. injury negligently caused; it can not be upheld as proceeding upon the theory that the particular injury for which damages are sought was caused both wilfully and negligently, that is, inadvertently. There is some confusion in the pleading, indicative, perhaps, of uncertainty in the mind of the pleader as to the theory to be adopted. Considering the language of the pleading in its ordinary meaning, and most strongly against the pleader, it can not properly be construed as fully and sufficiently showing a cause of action for wilful injury. This is plain enough, we think, without taking space to recapitulate, transpose, analyze or group the averments. If the pleading is good, it must be because it is sufficient as a complaint for injury negligently caused. It may be said that it is shown sufficiently, though awkwardly, that the alleged injury to the appellee was caused by the

2. negligence of the persons in the service of the appellant who had charge of the locomotive engine upon the railway, characterized also as negligence of the appellant, and that the appellant should be held liable under our employers' liability statute (§7083 Burns 1901, Acts 1893, p. 294, §1), if the appellee is shown by the pleading to have been, at the time of the injury, an employe in the service of the appellant.

In *Bowles* v. *Indiana R. Co.* (1901), 27 Ind. App. 672, 87 Am. St. 279, we said: "The general rule may be said to be that where an employe is being carried by his em-

ployer in the conveyance of the latter to and from the work for which the former is employed, he is regarded not as a passenger, but as an employe; though if he is being carried merely for his own convenience, pleasure or business, he is a passenger."

Where employes of a railroad company went some miles upon a hand-car, repairing the railway, and towards evening, while returning upon the hand-car .to the place of starting, one of them was injured, the persons operating the hand-car were treated as fellow servants. *Chicago, etc., R. Co.* v. *Artery* (1890), 137 U. S. 507, 11 Sup. Ct. 129, 34 L. Ed. 747.

When an employe, at the close of his day's work in the defendant's factory, was changing his clothing preparatory to going home, and was injured by reason of the fact that machinery was unguarded, it was held that the relation of master and servant continued to exist. *Helmke* v. *Thilmany* (1900), 107 Wis. 216, 83 N. W. 360.

In *International, etc., R. Co.* v. *Ryan* (1891), 82 Tex. 565, 18 S. W. 219, the plaintiff was a bridge carpenter employed by the day by the railroad company. While sitting in a car provided as a sleeping car for the bridge gang by the railroad company, he was injured through negligence of an employe in charge of a switch engine which collided with the car, which was upon a side-track where it had arrived about 6 o'clock in the evening. His day's work consisted of ten hours' labor. His time was his own after 6 o'clock. He had no contract for any particular length of time, and could have quit the employment of the railroad company at 6 o'clock. He was entitled to sleep in the car at the end of each day's work. He expected to go to work with the bridge gang next day, as usual. He was not working for the railroad company when he was injured, but was attending to his own affairs, engaged in writing a letter. After 6 o'clock that evening he was not bound to

work further for the company, and the company was not bound to keep him longer. It was held that he was in the employment of the company when injured. It was said by the court: "His presence in the car on the side-track at the time of the collision can be explained in no other way under the proof. It was only by reason of the fact that he was an employe of the company that he was in the car on the side-track at the time he was injured."

In *Wilson* v. *Banner Lumber Co.* (1901), 108 La. 590, 32 South. 460, the laborers of the defendant were taken about eighteen miles every morning to their place of work, and returned in the evening on the defendant's hand-car. This mode of conveyance had to be resorted to in order to obtain labor at the place needed. There was at least acquiescence of the defendant in permitting the laborers to ride on the hand-car in returning home, when one of them, for causing whose death the action was brought, was killed by the collision of the car with an animal on the track. It was held that the defendant owed him the duty of a master toward a servant.

In *Heldmaier* v. *Cobbs* (1901), 96 Ill. App. 315, the plaintiff, employed in the operation of a steam-drill, was injured in the boiler-house from which the steam was provided by the employer, the injury occurring while the plaintiff was there eating his dinner, having ceased work for an hour and having gone to the boiler-house for such purpose. It was held that when injured he was in the employ of the defendant. It appeared that he was accustomed to eat there "by the consent, if not by the actual direction of the foreman. Appellee, therefore, had a right to be at the engine-house at the time in question and was there by consent of appellant. While he was not actually at work at the time, yet he was still in the employ of the master, in the sense that his business kept him in that vicinity. He was not in the position of a mere visitor, as

one who was not connected with the business would have been. Under the circumstances we think the master owed him, at the time of the accident, the same duties that he would have owed him had he then been actually at work at the drill."

The time at which the appellee was injured was not within the hours during which, under his contract, he was to work upon the bridge. He had worked as a bridge builder upon the bridge the full time for that day. If, after actually ceasing so to work, but while still on the premises of the company, and when starting therefrom to walk or ride upon a public highway, he had been injured by another servant of the company acting in the service of the latter, the appellee would probably be regarded as a fellow servant; though, if the injury had occurred while he was pursuing his journey homeward along such highway, walking or riding in a buggy, he would probably be regarded as a stranger. At the time of the injury the relation between the parties as to the work for which he was employed was changed, in that he was not then subject to orders of the appellant as to the manner of doing work. Where a workman employed to work on the track quit that work one-half hour before the usual quitting time, upon the order of his foreman to get upon a train to go to a place where he was to receive his wages, and was injured during his usual working time, while going along the track to get upon the train, it was held that the relation of master and servant had not changed. *O'Brien* v. *Boston, etc., R. Co.* (1885), 138 Mass. 387, 52 Am. Rep. 279.

Where, under the contract of employment, the employe was provided with transportation free of charge to and from the place of his work, he having no particular duty to perform while so traveling, his wages, at a certain sum per hour, beginning when he reached the place of work and ending when he left that place, it was held that while

so on his way to work he was an employe. *Vick* v. *New York, etc., R. Co.* (1884), 95 N. Y. 267, 47 Am. Rep. 36.

The pleading before us shows that the appellee was returning home from his work on a railway velocipede furnished to him by the appellant for that purpose, which he was at the time using at the instance and request of the appellant. It is not shown why or upon what motive or for what consideration the velocipede was furnished or the request was made. It does not appear to have been a part of the contract of employment that the appellee should or might so use the vehicle. It does not appear that under his contract he was to do more than to work upon the bridge or to receive therefor more than his wages, and it does appear that the time during which he was to work that day was ended. It is not shown that he was furnished the velocipede and requested to use it in the course of his employment, but, so far as expressly made to appear, it was used and intended by both parties to be used for his own convenience alone. It is not expressly and affirmatively shown that it was thus used for the benefit or convenience of the railroad company or for the mutual benefit of the parties, or that it was so used habitually or on any other than this particular day, or upon an understanding or agreement entering into the original employment or any subsequent contract, or that the giving of the permission or making of the request so to use it was in any manner a means by which the company procured the appellee's services on the bridge, or constituted an inducement to enter or to continue in the service. The use of the velocipede may have been, so far as appears affirmatively, a privilege to which, under the terms of the employment, the appellee might not have been entitled, though bound to perform his labor on the bridge. The privilege may have been connected with the employment, in that it would not have been granted if the appellee had not been an employe, or, being such, had not resided at a

distance from the place of his work; but even this is not affirmatively shown. It not appearing that the rightful use of the velocipede was in any way an incident of the employment, there seems to be wanting an important element of a cause of action in favor of the appellee as an employe. It is not enough, as a matter of pleading, that all the facts as to which the pleading is thus silent might have existed consistently with what is alleged. The theory on which the pleading proceeds must be gathered from its averments.

It does not necessarily follow that the pleading did not show a cause of action on another theory. "If a servant is injured outside of his working hours, and while not on duty, by another servant of the same master, he can recover damages from the master provided a stranger might recover such damages under the same circumstances; for he is not a servant when injured, and is not injured by a fellow servant; in such a case the status of the injured servant is that of a stranger." 4 Thompson, Negligence (2d ed.), §4990. Though we hold the appellee not shown to have been an employe in the service of the appellant at the time of the injury, yet the injury is by the pleading attributed to the negligence of the appellant, and if it appears from the pleading that when he was injured on the railroad he was not a trespasser or a mere licensee, and does not affirmatively appear that he proximately contributed to his injury by his own fault or negligence, the pleading must be regarded as showing a cause of action.

The rule is the same as to trespassers and mere licensees; that is, licensees without invitation or inducement. An employe who goes upon the track, not in the line or discharge of his duty, and without invitation, express or implied, is at most a mere licensee to whom the company owes no duty to keep the place safe. *Cleveland, etc., R. Co.* v. *Workman* (1902), 66 Ohio St. 509, 540, 64 N. E. 582, 90 Am. St. 602.

It appears, to repeat, that the appellee was returning in the evening from his working place to his home on the railway velocipede "furnished to him by the defendant company for that purpose"—that is, to ride thus upon the velocipede over a particular portion of the railroad on that evening—which velocipede he was at that particular time using at the instance and request of appellant. If he was thus upon the track by invitation of the appellant, he was not a trespasser or a mere licensee; and though he could not recover if himself guilty of contributory negligence, he was not required to negative such negligence in his pleading or by his evidence, the burden as to that matter being upon the appellant. As a matter of pleading, we think the appellee was shown to have been upon the railroad track, not through bare tolerance of the company, but under circumstances which placed upon the appellant the duty not to injure him through negligence as alleged in the pleading.

It is insisted on behalf of the appellant that the special findings of the jury in answer to interrogatories show that the general verdict in favor of the appellee proceeded upon the first paragraph of the complaint, and not upon any of the other paragraphs; and we may so treat the case.

A motion of the appellant for judgment in its favor upon these special findings, notwithstanding the general verdict, was overruled.

We will notice the grounds upon which the appellant in the statement of points in its brief contends that, upon the special findings of the jury, the appellant was entitled to judgment as to the first paragraph of complaint. It is insisted that the facts specially found show that the appellee's injuries were not wilfully inflicted by the appellant. Inasmuch as we have determined, in agreement with the view taken by counsel for the appellant, that the first paragraph of complaint did not show that the

injury was one wilfully inflicted, it was not necessary that the evidence should establish such a state of facts.

Again, it is contended that the special findings show that the appellee was using the velocipede for his own convenience and accommodation, and that he was not 7. at the time in the performance of any service for, or transacting any business with the appellant, and that therefore he was a trespasser, or at most a licensee, and the appellant owed him no duty except not wilfully to injure him.

In 2 Thompson, Negligence (2d ed.), §1836, referring to the distinction between those who use a railway track for the purpose of passage, without the consent of the company, express or implied, but with its bare tolerance, and those who use it with its consent or invitation, express or implied, it is said: "The owner or occupier of real property has, of course, the right to consent to have a stranger make a passageway over it for his own convenience entirely, and not in any sense for the benefit of such owner or occupier; and if he makes such a concession to a stranger, although gratuitously, it is a sound and just conclusion that this raises a duty upon the part of the owner or occupier, not merely to abstain from wantonly injuring the stranger when so using his premises, as in the case of a trespasser or bare licensee, but to exercise ordinary or reasonable care to avoid injuring him." A consideration is 8. not essential to the creation of a valid license. *Spades* v. *Murray* (1891), 2 Ind. App. 401.

The other reasons under this head proceed upon the grounds that the answers to the interrogatories did not sustain an action based upon the theory that the relation of master and servant existed when the appellee was injured, and that, if they did show that he then was performing service under such a relationship, his recovery should be prevented by his contributory negligence, as he, it is claimed, by looking, might have seen the train for a dis-

tance of a quarter or a half of a mile before it struck him. As we have seen, it was not necessary to the appellee's cause of action under the first paragraph of complaint to show the appellee was serving as an employe at the time of the injury.

Upon careful examination of the lengthy special findings, we do not discover any fact or facts which, taken in connection with other facts found or provable under the issue, should override the conclusion, included in the general verdict, that the appellee was not proved to have been chargeable with contributory negligence.

Judgment affirmed.