LEWIS E. TAYLOR, plaintiff below, plaintiff in error, *vs.* GEORGE W. BUSH and SONS COMPANY, a corporation of the State of Delaware, defendant below, defendant in error.

*Personal Injuries, After Working Hours and After Plaintiff had Received his Pay—Leaving Premises of Employer—Fellow-Servant—Nonsuit.*

1. It is never a test of the application of the fellow-servant doctrine to any given case whether or not the injury was received by the servant during working hours or when he was at work after working hours. The sole test of its application thereto is whether at the time of the injury the servant was doing something which it was his duty, or he had a right, to do under the contract. If he was so acting, the doctrine applies; if not, it does not apply.

2. The plaintiff was injured in the defendant company's stable yard at the end of his day's work, immediately after getting his pay slip and money, and just as he was about to enter a stable door for the purpose of getting his dinner pail, in accordance with his custom. The injury occurred on the defendant's premises where his work was in part performed while he was enjoying a privilege allowed by the defendant to the plaintiff in his capacity of servant, and involved in his service. *Held* that the relation of master and servant was then subsisting.

3. The injury having been caused by one of the defendants, drivers, a servant engaged in the same kind of employement, by dropping upon the plaintiff's head without warning a bale of straw, and it not being claimed that this servant was known in any way to be incompetent, or that the master was guilty of any negligence in employing him, or in failing to provide other methods for the transfer of the straw from the loft to the horses' stalls; *held* that the case came clearly within the fellow-servant doctrine, and the employer was not liable.

*(May 6, 1907.)*

NICHOLSON, CHANCELLOR, and SPRUANCE and BOYCE, J. J., sitting.

*Franklin Brockson* for plaintiff in error.

*Christopher L. Ward* and *John P. Nields* for defendant in error.

Supreme Court, June Term, 1906.

WRIT OF ERROR to the Superior Court of the State of Delaware in and for New Castle County.

NICHOLSON, CHANCELLOR, delivering the opinion of the Court:

This was an action on the case brought in the Superior Court in and for New Castle County by Lewis E. Taylor, the plaintiff, against George W. Bush and Sons Company, the defendant, for the recovery of damages for personal injuries.

Under the instruction of the Court below, the jury rendered a verdict in favor of the defendant, the plaintiff having declined to accept a nonsuit.

Upon this verdict judgment was entered and a writ of error taken by the plaintiff.

In the court below the motion for a nonsuit was based upon the ground that it appeared from the evidence of the plaintiff that he was a servant of the defendant when he was injured, and that his injury was due to the negligence of a fellow-servant.

The facts in the case are in substance as follows:

The plaintiff was employed by the defendant company as one of the helpers on the defendant's coal wagons. He had been

so employed for about three months, his hiring being from day to day, and he lived about fourteen blocks from the defendant's place of business and stables. The plaintiff and other servants of the defendant, drivers of coal wagons and "helpers", were in the habit of bringing their dinners each day, by permission of the defendant, to the stables and stable yard of the defendant, and of there eating their noon-day meal, either in the stable or stable yard, and leaving their dinner pails in the stable until the end of the day's work, when they carried them home.

The plaintiff's duties included some occasional work about the stables, when so ordered by the stable boss, such as putting straw in the stalls from the loft above, etc.

On the 7th of April, 1903, about six o'clock in the evening, the plaintiff, after receiving his pay slip and money at the company's office, which was situated about a block from the company's stables, walked to the stable yard, as he was in the habit of doing, to get his dinner pail. As he was walking on a passage way inside the company's stable yard, near a door of one of the stables on his way into the stable to get his dinner pail, a servant of the defendant by the name of Blake, one of the defendant's drivers, threw a bale of straw out of the stable loft, which fell upon and seriously injured him.

One of Blake's duties was to get straw out of the loft to bed his horses with, and he generally threw it out of the window, but there was a hole in the back part of the stable loft, and it was sometimes thrown down in that way.

The plaintiff had no notice or warning that the straw was about to be thrown down.

There are a number of assignments of error, but counsel on both sides practically agreed that there is but one question before this Court; that is, whether the plaintiff was a servant of the defendant at the time he was injured.

The counsel for the plaintiff in his elaborate and carefully prepared brief expresses the whole of his contention in the following words:

"It is respectfully submitted that the evidence shows that

the plaintiff was not a servant of the defendant at the time he was injured; that he was injured by gross negligence of the defendant while he was on its premises at its invitation, and in the excercise of due care and caution upon his part; that the privilege of going upon the defendant's premises was a mere gratuity and not extended to him by any contract of service."

The ground upon which the plaintiff's counsel bases his contention that the plaintiff was not at the time he was injured a fellow-servant of Blake, the servant of the defendant who dropped the bale of straw upon him, in consequence of which he was injured, is that at that time he had finished his day's work and was off duty.

The question raised is an interesting and important one, and involves an examination and analysis of the reasoning of the authorities which have established what is called the fellow-servant or common employment doctrine, in order to determine its application to such a state of facts as is presented in this case, and ascertain whether the facts and circumstances of this case are within the scope of the doctrine.

A great number of authorities have been cited by counsel on both sides who have furnished the Court with very full briefs. No cases have been cited from our own reports, however, and the particular question involved comes before us as a case of first impression in this State.

The opinion of Chief Justice Shaw in the case of *Farwell vs. Boston and Worcester R. Corp.*, 4 *Metc.*, *page* 49, (1842) is unquestionably the "fountain head" of the "fellow servant or common employment doctrine," as Pollock states in his work on Torts.

Justice Harlan quotes and adopts the language of this opinion in the case of *Hough vs. Railway Co.*, 100 *U. S.*, page 215, (1879) when for the first time it was explicitly laid down by our Supreme Court, and in the leading English case,*Bartonshill Coal Company vs. Reid*, 3 *Macq. H. L. Cases*, page 266 (1858), that being the case in which the House of Lords first settled the doctrine for both England and Scotland, Lord Chancellor Cram-

worth also adopted and paid homage to this opinion of Chief Justice Shaw.

In order that we may have this doctrine before us in a most authoritative form, I will  quote from Justice Harlan's opinion at length.

" 'The general 'rule,' said Chief Justice Shaw, in *Farwell vs. Boston & Worcester Railway Corporation* (4 *Metc.* (*Mass.*) 49), 'resulting from considerations as well of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal contemplation the compensation is adjusted accordingly.   And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment.   These are perils which the servant is likely to know, and against which he can as effectuaally guard as  the master. There are perils incident to the service, and  which can be  as distinctly foreseen and provided for in  the rate of compensation as any other.' "

" To prevent misapprehension as to the scope of the decision, he deemed it necessary, in a subsequent portion of his opinion, to add:  'We are far from intending to say that there are no implied warranties and undertakings arising out of the relation of master and servant.   Whether, for instance, the employer would be responsible to an engineer for the loss arising from a defective or ill-constructed steam-engine; whether this would depend on an implied warranty of its goodness and sufficiency, or upon the fact of wilful misconduct or gross negligence on the part of the employer, if a natural person, or of the superintendent or immediate representative and managing agent, in case of an incorporated company,—are questions on which we give no opinion.' "

" As to the general rule, very little conflict of opinion is to be found in the adjudged cases, where the court has been at liberty to consider it upon principle, uncontrolled by statutory regulations.   The difficulty has been in its practical application to the

special circumstances of particular cases.  What are the natural and ordinary risks incident to the work in which the servant engages; what are the perils which, in legal contemplation, are presumed to be adjusted in the stipulated compensation; who, within the true sense of the rule, or upon grounds of public policy, are to be deemed fellow-servants in the same common adventure or undertaking,—are questions in reference to which much contrariety of opinion exists in the courts of the several States. Many of the cases are very wide apart in the solution of those questions."

It is obvious that we are not concerned with the limitations and exceptions we have cited for the purpose of giving a more complete statement of the doctrine.  Upon each of these limitations or exceptions, and upon others as well that are not enumerated, there are a host of decisions and conflict of authority; but, as appears from the statement of the case before us already made, the only question for this Court to decide is whether the plaintiff at the time he received the injury was or was not a servant of the defendant within the scope of the doctrine.

In a case where, as in the one before us, no question was raised but the single one, whether or not the person injured, the plaintiff, was at the time of the injury a servant of the defendant within the scope of the doctrine, Justice Cochran of the U. S. District Court (*Dishon v. Cincinnati, N. O. & T. P. Ry. Co.*, 126 *Fed.* 197) argues as follows, after quoting from Justice Harlan a portion of the above and from Pollock on Torts, a statement of the doctrine and the reason for it essentially the same as that above quoted from Chief Justice Shaw:

"Serious question has been made as to whether this reasoning and the fellow-servant doctrine based upon it are sound.  But that this reasoning is the true basis of that doctrine is not now disputed by any one.  As Professor Pollock says, it 'has prevailed in the authorities.'  This being so, this reasoning should be given its full force.  There should be no sticking in the bark at any point.  It should be held that the servant assumes all the risks he runs, excluding that of the negligence of the master, and

including that of the pure negligence of co-servants, whenever doing anything contemplated by his contract of employment, i. e., which under that contract it is his duty or he has a right to do. In other words, it should be held that the assumption of risk by the servant is as broad and sweeping as the scope of action on his part required or authorized by the contract.  The risk of the servant goes with him wherever he goes under his contract of employment, and the assumption should accompany the risk. There is "no good reason for holding that the assumption of risk when the servant is doing one thing required of him by the contract, and does not exist when he is doing another thing so required, or that it exists when he is doing a thing required of him by the contract, and does not exist when he is doing a thing which he is simply authorized to do by the contract.  Any stopping short, therefore, of making the assumption by the servant of the current risks of his employment as wide as the action on his part contemplated by the contract discredits the principle and reasoning on which the fellow-servant doctrine is based and that doctrine itself.  Hence it is never a test of the application of the fellow-servant doctrine to any given case whether or not the injury was received by the servant during working hours or when he was at work after working hours.  The sole test of its application thereto is whether at the time of the injury the servant was doing something which it was his duty or he had a right to do under the contract.  If he was so acting, the doctrine applies; if not, it does not apply.  I think this test is clearly deducible from the relevant authorities."

The learned Judge then cites and analyses a great array of authorities in a very lengthy and interesting opinion, quoting very freely from most of the cases and discriminating those cited in support of the plaintiff's contention.  His conclusion was that the injuries received by the decedent of the plaintiff, Dishon, were caused by the negligence of a fellow-servant and, therefore, the defendant company was not liable.

This list of authorities seems to be absolutely exhaustive. No relevant case has been cited by counsel in the argument of

the present case not cited and analyzed in the opinion of Judge Cochran, nor have I been able to find any, and it seems unnecessary, if not superfluous, to extend the limits of this opinion by any wide review of the same authorities.

Counsel for the defendant in their admirable brief have selected and grouped and analyzed the most relevant and important cases, not only those directly supporting their contention, but those cited by counsel for the plaintiff.    Of these, *Gilshannon vs. Stony Brook R. R. Co.*, 10 *Cush.* 228, a leading case, *Ionnone vs. Railroad*, 21 *R. I.* 452, *Seaver vs. Boston and Maine R. R. Co.*, 14 *Gray* 466, *Gilman vs. Eastern R. R. Co.*, 10 *Allen* 233, *McGuirk vs. Shattuck*, 160 *Mass.* 45, *Rosenbaum vs. St. Paul R. R. Co.*, 38 *Minn.* 173, *Wright vs. North Hampton R. R. Co.* ( *N. C.* ) 29 *S. E.* 100, and *Bowles vs. Ind. R. R. Co.*, 62 *N. E.* 94, are cases in which the injuries complained of were received before or after working hours when the employee was being conveyed to or from his work by the employer, and it was held in each case that this was a permissible privilege allowed by the defendant to the complainant in his capacity as servant.

The transportation was an incident connected with the employment of the plaintiff, and the court held that while in the enjoyment of it; the relation of servant and master existed, and that the negligence of the servant or servants engaged in the duty of transportation was the negligence of a fellow-servant.

*Lowell vs. Howell, L. R. I. C. P. D.* 161, *Boldt vs. New York Central R. R. Co.*, 18 *N. Y.* 432, *Crowe vs. New York Central R. R. Co.* 70 *Hun.* 37, *Mele vs. Dela. Hudson Canal Co.* 14 *N. Y. Supp.* 630, *Oleson vs. Andrews*, 168 *Mass.* 261, are all cases in which the injuries complained of were received on the premises of the defendant before or after working hours, when the employee was walking to or from his work.    In these it was held, in like manner, that what the employee was doing was so far involved in his service that the relation of master and servant then existed.

In *Heldmaier vs. Cobbs*, 96 *Ill. App.* 315, the employee was injured during the dinner hour while eating.

In *Helmke vs. Thilmany*, 107 *Wis.* 216, employee was in-

jured after his work was over by cog wheels in a closet where he had gone for his coat.

In *Boyle vs. Columbian Fireproofing Co.*, 182 *Mass.* 93, the employee was injured on an elevator on which he was going down, with other workmen, to dinner.

In the last three cases it was held that the relation of master and servant existed with the consequence of imposing liability on the employer, whose negligence caused the accident, and there was no question of negligence on the part of a fellow-servant.

*Brydon vs. Stewart*, 2 *Macq. H. L. Cases* 30, was a Scotch case which went up to the House of Lords and was afterwards quoted and analyzed by Lord Cramworth in the leading English case, which was cited above,—*Bartonshill Coal Company vs. Reid*, *Macq. H. L. Cases* 266.

In *Brydon vs. Stewart* the employees were injured in being drawn out of a mine after they had struck work, and the master was held liable in that case, (there being no question of negligence of a fellow-servant) because the relationship of master and servant was still subsisting.

The facts in the case of *Dishon vs. Cincinnati N. O. & T. P. Ry. Co.*, already discussed and quoted, involved an application of the principle deduced from the cases cited by the learned Judge in that case, a few of which we have considered above, which it is not incumbent upon us in the present case either to approve or disapprove.

In such a case as the one presented there can be no doubt of the applicability of the doctrine as laid down by the authorities we have cited.

A part of the plaintiff's duties as a "helper" to assist the drivers of the defendant company's coal wagons in the delivery of coal was, as he testifies, to feed the horses in the defendant's stables, or put straw in their stalls, mend harness, etc., whenever he was called upon by the stable boss to perform such services, while it was one of the regular duties of the drivers to get straw down for the horses from the stable loft.

A nooning of only thirty minutes was allowed to the "help-

ers" and "drivers", and the privilege was accorded to them of eating their noon-day meal in the stables or stable yard and of leaving their dinner pails in the stable, calling for them at the end of each day's work, a privilege obviously accorded to them by the defendant company in part for the reason that the employees might thus eat their noon-day meal and be on the spot ready for work again at the end of their thirty minutes nooning. Plaintiff testifies that he lived about fourteen squares away from the stable,—too far for him to go home for his dinner in the time allowed.

It follows that when the plaintiff was injured in the defendant company's stable yard at the end of his day's work, immediately after getting his pay slip and money, and just as he was about to enter a stable door for the purpose of getting his dinner pail, in accordance with his custom, the injury occurred on the defendant's premises where his work was in part performed, while he was enjoying a privilege allowed by the defendant to the plaintiff in his capacity as servant, and so far involved in his service, that the relation of master and servant was then subsisting.

Therefore, as it is admitted that the injury was caused by the negligence of one of the defendant company's drivers, a servant engaged in the same kind of employment, by dropping upon his head without warning a bale of straw, and it is not contended that this servant of the defendant was known, in any way, to be incompetent, or that the master was guilty of any negligence in employing him, or in failing to provide other methods or appliances for the transfer of straw from the loft to the horses' stalls, it follows that the case comes clearly within the so called fellow-servant doctrine and that the employer is not liable.

We think there was no error in the rulings or charge of the learned Chief Justice, and, therefore, the judgment of the Court below is affirmed.