On the Merits — Statement of the Case.
MONROE, C. J.
On February 21, 1913, for -a premium of $10, defendant issued a policy insuring Henry Louis Lawton against loss of life, limb, sight, or time, by accident, and against loss of time by sickness, to the extent therein provided, all subject to the conditions therein stated; the named beneficiary in case of death being Fannie M. Lawton, wife of the insured, and plaintiff in this suit. The policy bore upon its back the legend:
“Important Notice.
“This is a limited insurance policy. Indemnity is granted by this policy subject to its provisions and limitations, for loss of life, sight, or time, from certain accidents, sustained in the manner specified, and for loss of time by sickness due to diseases named in this policy.
“Please read and sign your policy.”
The body of the policy is divided into six parts, which are more or less subdivided, those provisions which are pertinent to this case reading as- follows:
“Part I. Payments for Accidental Death, Dismemberment, or Loss of Sight as Stated in This Policy. — In first year of policy; For loss of life (principal sum of policy) $5,000.00: Provided such loss shall result within thirty days from the date of accident, solely from bodily injuries inflicted through external, violent, and accidental means, and solely and independently of all other causes, and only if such injuries are received while actually riding as a passenger in a place regularly provided for the transportation of passengers, within a street car, railroad car, * * * or other public conveyance provided by a common carrier for passenger service only. * * *
“Part II. For one-fifth of the amount stated in part I, if such loss shall result within 30 days from date of accident solely from such injuries which shall have caused continuous total disability from date of accident to date of such *667 loss, but only when such injuries are sustained as follows:
“(1) While riding in any passenger elevator.
“(2) By the burning of certain buildings.
“(3) While riding in any private automobile.
“(4) While actually riding within a conveyance drawn by horse power provided that the insured shall not then be a hired driver thereof, or be riding or driving in or upon any conveyance used for any business purpose or any work whatsoever at the time of the accident (but the exception shall not apply to any physician * * *), in consequence of a collision or other accident to the conveyance in which the insured is so riding. * * *
“Part IV. Death mid Weekly Payments for other Accidental Causes. — If the insured should sustain, during the time of this insurance, any bodily injuries effected exclusively by external, violent, and accidental means otherwise than as specified in parts I and II hereof, which shall have caused continuous total disability from date of accident to date of loss, and which shall, independently of all other causes, result in death within 30 days from date of accident, the company shall pay, in lieu of all benefits, one-fiftieth (i/so) of the amount specified in part I for loss of life in the first year of the policy.”
Mr. Lawton was about 57 years of age at the time of the accident out of which this suit has arisen, and had worked for the greater part of his life as a carpenter and builder. About two years before the accident, he had bought a farm of 80 acres near Oak Grove, in the parish of West Carroll, and had assumed the management and operation of it, planting crops of corn, cotton, and potatoes, and probably other produce, and raising hogs enough to furnish the pork and bacon required for home consumption. His relation to the business of carpentering and farming will sufficiently appear from the following excerpts from the testimony of the plaintiff, to wit:
“A. He was farming at the time of his death and worked at the carpenter’s trade, too. * * * Q. What was the size of his farm? A. 80 acres. Q. Did he work on the farm himself? A. He hired labor to work the crop. * * * Q. What did he raise? A. Cotton and corn. Q. Did he raise other farm products, such as hogs and potatoes? A. Only for his own use. Q. In your claim against the Pacific Coast Casualty Company you stated that your husband had hauled potatoes to Oak Grove; to whom did you state a little bit ago that those potatoes were sold? A. Mr. Jenkins. * * * Q. Your husband was in the habit, Mrs. Lawton, of marketing his cotton and other products, was he not? A. He had not marketed any that fall. Q. I am- asking you about his habit; in other words, he did the selling of his crop? A. Yes; he did when he had any to sell.”
The witness further testifies that she had ordered a negro boy to take the potatoes in to the depot (to be shipped to the purchaser at Endora), and did not know at the time that her husband was going. As a matter of fact, her husband did go, and, on the way they met his son, a lad of 16 years, who got into the wagon and returned to town with them. Upon their arrival at the depot Mr. Lawton, according to the testimony of the boys, got out of the wagon and “went up town,” his son held the horses, and the negro unloaded the potatoes and “put them in the depot.” Mr. Lawton then rejoined them, and they all started back home in the wagon, the plain inference being that Mr. Lawton, either before he went up town or after he returned to the depot, attended to the shipment of the potatoes, and it not being unreasonable to assume that he was selling potatoes for the first time for the reason that he had not previously sold his cotton, if he had made any, or. any crop of that year. On their way home, with young Lawton driving, the horses became frightened and ran away, and Mr. Lawton and the negro were thrown out and injured, Lawton so badly that, after suffering continuous total disability for five days, he died. Thereafter there was considerable correspondence between plaintiff and her attorney, on the one part, and the defendant (which was no longer doing business in Louisiana), on the other, in the course of which defendant several times tendered to plaintiff a check for $100 as the *669 amount due her under part IV of the policy here sued on, which tenders were declined, and suit was brought for $1,000 as due under part II of the policy, to which was added a claim for $1,000 (and $500 as attorney’s fees) as the penalty imposed by our law for the failure of the company to make prompt payment, and a tender was then made of $100 plus $35, the latter amount representing the costs incurred up to the date of the last tender, which was also declined, and, the trial judge having given judgment for the $135 and dismissed the suit as to the balance claimed, plaintiff took the appeal.
Opinion.
[2] According to part II, paragraph (4), of the policy, the beneficiary is entitled to one-fifth of $5,000 if the insured is injured to the extent and with the result as previously stated in the policy, “while actually riding within a conveyance drawn by horse power, provided that the insured shall not then be a hired driver thereof or be riding in or upon any conveyance used for any business purpose or any work whatsoever” (exception being made in that respect in favor of physicians and certain others). Where the loss occurs from accidents other than those for which recovery is allowed under part I and part II, the beneficiary is entitled, under part IV, to recover one-fiftieth of the maximum, or “principal sum” for which the policy issues, which, being $5,000, fixes the amount recoverable in such cases at $100. The sole question here presented, therefore, is whether, when the accident occurred which resulted in the death of the insured in this case, he was riding in or upon a horse-drawn “conveyance used for any business purpose, or any work whatsoever,” within the meaning of paragraph (4) of part II of the policy, or was riding within a horse-drawn conveyance which was not so used.
We find that, though the insured had on hand at the time of the accident some little unfinished business which he had undertaken as a carpenter and builder, he was, also, and seriously engaged in the business of farming, and that the wagon upon which he was riding was a conveyance which was then being used for the purposes of that business. The farm wagon in which the sold product of the farm is hauled to the railroad for shipment to the purchaser is as surely used for the purposes of farming in returning to the farm, whether for another load or otherwise, as in going to the railroad, since the one is the necessary consequence of the other, unless, after delivery of the product at the railroad, the owner parts with the wagon or devotes it to some other use. Whether in the case last mentioned (as, for instance, if the owner, after delivering his product, were to use his wagon for the purposes of a fishing expedition) it would, while so used, be regarded as a conveyance used for a business purpose, need not be here determined; nor need we decide whether a fine carriage in which the owner conveys a business letter to the post office is thereby a conveyance used for a business purpose within the meaning of the policy. Counsel for defendant in his brief suggests as his idea of the reason why the policy discriminates against horse-drawn vehicles used for business or work:
“That a vehicle used for business or work— that is, in the sense' of work on the farm — has not all the.safeguards against danger that a vehicle otherwise used is equipped with. For instance, a salesman [being one of the favored classes] engaged in his calling and traveling in a horse-drawn vehicle is protected by a greater degree of care in the handling of the vehicle, by safety appliances, etc., while the ordinary wagon used for such work is without such safeguards, all sorts of equipment, from a rack for hay to a frame for wood, being used on wagons engaged in work. The risk in these cases is greater, and the provision is reasonable and proper.”
*671 The idea seems reasonable to any one who has seen the driver standing upon the flat surface of a cotton float, with four mules jolting it at a swift trot over cobblestone paving, or the driver of a lumber or hay wagon, perched upon the top of a load which may tilt or slide with him. But, whatever the reason may be, the defendant before the court, in its contract with Mr. Lawton, limited its liability in the event of his being injured while riding in or upon a horse-drawn conveyance used for the purpose of business or work to $100, and, as we are of opinion that the wagon in or upon which he was riding when injured was then being used .for the purposes of the business of farming, we conclude that it (defendant) should not be condemned for more than the amount for which it thus bound itself.
The learned counsel cite several cases in which employés, meeting with accidents while being returned home under their contracts of employment, after finishing the work of the day, have been held to retain their status of employés, entitled to the same consideration as though actually at work (Wilson v. Banner Lumber Co., 108 La. 590, 32 South. 460; Kansas Pac. R. Co. v. Salman, 11 Kan. 83; Russell v. Hudson River R. Co., 17 N. Y. 134), and we think they are applicable by analogy to the case here presented — in the one case the work and return, and in the other the going and return, being parts of the same employment.
The judgment appealed from is therefore affirmed.